**UNITED STATES, Appellee,**

v.

**Hubert MICHAUD, Defendant, Appellant.**

**No. 90–1627.**

United States Court of Appeals, First Circuit.

Submitted Oct. 2, 1990.

Decided March 15, 1991.

Hubert Michaud on brief pro se.

Jeffrey R. Howard, U.S. Atty., Shirley D. Peterson, Asst. Atty. Gen., Robert E. Lindsay, Alan Hechtkopf and Gail Brodfuehrer on brief, for appellee.

Before CAMPBELL, TORRUELLA and SELYA, Circuit Judges.

PER CURIAM.

This is appellant's fourth appeal arising from his conviction on two counts of tax evasion. *United States v. Michaud,* 860 F.2d 495 (1st Cir.1988) (direct appeal); *United States v. Michaud,* 901 F.2d 5 (1st Cir.1990) (motion pursuant to 28 U.S.C. § 2255); *United States v. Michaud,* 925 F.2d 37 (1st Cir.1991) (petition for writ of error *coram nobis*). The appellant was sentenced to concurrent 18 month terms of imprisonment and fined $60,000 but, pursuant to a motion for reduction of sentence, appellant was released from incarceration after having served approximately 7 months. This present appeal is from a district court judgment of contempt for failure to pay the $60,000 fine imposed in March 1988, as part of the sentencing for the January 1988 tax evasion convictions. We affirm.

On March 6, 1990, the government sent appellant a letter informing him that it possessed evidence that he had the personal financial resources to pay the outstanding $60,000 criminal fine and that it would institute contempt proceedings in the near future if the fine was not paid. On March 13, 1990, the government applied, in the district court, for an order to show cause why the appellant should not be held in contempt of court. The district court set a hearing date of April 5, 1990. The appellant filed, pro se, a response, a motion to dismiss or for summary judgment with supporting brief, and a motion to stay the fine.

The appellant appeared pro se at the hearing. The district court found that the appellant had the financial ability to pay the fine and held the appellant in contempt. He was ordered to pay $60,000 plus interest from the date the defendant was released from incarceration (December 22, 1988), plus the government's attorneys' fees and costs. The court further directed that if the sum was not paid by April 30, 1990, the appellant would be sentenced to 5 months and 29 days incarceration. Although the appellant has not paid the ordered sum, it appears that the appellant has not been incarcerated at this time because, in accordance with the district court's order, he has posted a bond (in the form of a cashier's check) in the amount of $75,000, along with his notice of appeal.

On appeal, the appellant contends that the district court denied him his Sixth Amendment right to the effective assistance of counsel by failing to warn him of the potential adverse consequences of proceeding pro se. The speciousness of this contention becomes apparent from the following excerpt of the *appellant's* statement to the court at the contempt hearing.

First, however, I would like to advise the Court that I am but a layman in the science of law. Secondly, I do not have the financial resources to retain the assistance of professional counsel of my choice. I am therefore proceeding pro se in my defense of this case or this cause. A defendant in the trial of a criminal case has a right to conduct and manage his own case pro se. The right to act pro se is a right arising out of the federal Constitution. Also, *the framers of the Sixth Amendment recognized that a defendant in a criminal case is not likely*

*to be sufficiently learned in the law effectively to assert all of his guaranteed rights. They understood that the excessive emotional involvement in the outcome of his case might paralyze the accused in his ability to organize his defense, examine and cross-examine witnesses and present cogent argument in support of his cause.*

Therefore, to entrust and supplement all of the other rights of a defendant charged with a crime the final clause of the Sixth Amendment protects the right of the accused to have the assistance of counsel for his defense. This safeguard was surely not intended to limit in any way the absolute and primary right to conduct one's own defense in proper person.

With this in mind, the defendant respectfully submits that he will proceed pro se and ask that this Court has the reasonable position of applying liberal scrutiny to his self-representation and to hold him to less stringent standards than those expected by professional lawyers in drafting pleadings of this nature. The defendant further submits that he will make every effort to address the issues and to present his defense as best as he is capable.

(Emphasis added.)

This appellant was well aware of the potential consequences of proceeding pro se. His own words so advised the court. In these circumstances, there was no obligation on the court's part to inform the appellant of that which he already knew and, in fact, expressed to the court. The record shows that this appellant was aware of the dangers and disadvantages of self-representation. Despite these, he clearly intended to proceed pro se. He made his choice with his eyes wide open. *See United States v. Pina*, 844 F.2d 1, 6 n. 3 (1st Cir.1988).

■ To support a conviction for criminal contempt,[1] the government must establish three elements: (1) there was a lawful court order of reasonable specificity, (2) the appellant violated it and (3) the violation was willful. *See, e.g., United States v. Burstyn*, 878 F.2d 1322, 1324 (11th Cir. 1989). And, "a charge of criminal contempt requires the full panopoly [sic] of any criminal proceeding—notice, a full hearing, and proof beyond a reasonable doubt." *United States v. Nightingale*, 703 F.2d 17, 19 (1st Cir.1983).

There is no dispute as to the second element. The appellant has not paid his criminal fine. As to the first element, the appellant does not dispute that the imposition of the criminal fine was lawful. He complains, however, that the court never "formally" told him when the fine was due. There is no such requirement. A fine is

---

1. We note the distinction between civil and criminal contempt. In a civil contempt proceeding, the relief afforded is remedial and, if the relief is imprisonment, it is imprisonment until the party performs the required act. In a criminal contempt proceeding, however, the relief afforded is punitive, to vindicate the authority of the court and, if the relief is imprisonment, it is imprisonment for a definite period. *Hicks v. Feiock*, 485 U.S. 624, 631–32, 108 S.Ct. 1423, 1429–30, 99 L.Ed.2d 721 (1988).

The appellant was sentenced to a definite period—5 months and 29 days. In one sense, this sentence was conditional. He could avoid this incarceration by paying $60,000, plus interest from December 22, 1988, and attorneys' fees and costs, by April 30, 1990. Yet, there was also an unconditional aspect to the order. If he failed to pay the required amount by the specified date and, as a result, was incarcerated, it would not appear that he could, thereafter, shorten the term by complying with the order and paying the required sum.

In *Reina v. United States*, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960), the Court was presented with a case in a somewhat similar posture—a judgment of criminal contempt with a sentence of two years imprisonment (to commence at the expiration of another sentence which petitioner was then serving), but which permitted petitioner 60 days in which to comply with a grand jury subpoena, in which case the sentence would be vacated. The Court declined to address this apparent "admixture of civil and criminal contempt" since no question concerning it had been raised below or in the Supreme Court. *Id.* at 515, 81 S.Ct. at 265.

So too, in the present case, no question about the characterization of the district court's order was raised either below or in this court. The parties have proceeded as from a judgment of criminal contempt. So, therefore, shall we. We only add that, insofar as criminal contempt proceedings require greater procedural protections, the appellant received such.

due and payable immediately upon imposition, unless the court specifies otherwise and the court did not so specify here. 18 U.S.C. § 3565(b)(1)(A) (as applicable to offenses committed before November 1, 1987) (now codified at 18 U.S.C. § 3572(d) and, with respect to this issue, identical). That this was not a "stand committed" fine means only that the appellant would not have to remain in prison until it was paid. But this affected neither the fact that the fine was due and payable immediately nor the specificity of the court order.

Appellant's main contention on appeal is that his failure to pay his fine was not willful. This argument is two-pronged. First, he claims to have understood that his fine was "noncommittal" and refers to definitions of this term, such as "having no clear or distinctive character," suggesting to him, it appears, that there was no specified payment date. Having this understanding, appellant says, means that he did not intentionally disregard his obligation to pay.

The appellant's characterization of his fine is obviously mistaken. The fine was "non committed," not "noncommittal." (And, as we have already stated, that the appellant was not required to remain in prison until he paid the fine affected neither the fact that the fine was due and payable immediately nor the specificity of the court order.) Assuming, however, that this understanding, although mistaken, supports appellant's claim that his failure to pay was not willful, that support, nonetheless, no longer existed at least as of the date that the government notified appellant that it was seeking payment. At the hearing, appellant said that he was told, on March 8, 1990, by his (former) counsel, that the government had contacted him and informed counsel that it would seek a contempt finding for failure to pay. By March 8th, therefore, and certainly by the time of

the show cause hearing on April 5, 1990, the appellant could no longer claim that he was unaware when payment was due.

■ We then turn to the second prong of appellant's contention that his failure to pay was not willful: his claim that he does not have the financial ability to pay the fine. There is substantial evidence in the record, however, to support the district court's finding that the appellant, indeed, has the financial ability to pay the fine. The finding, therefore, merits our respect. *See* 3 C. Wright, Federal Practice and Procedure, § 715 (2d ed. 1982) ("The judgment and findings of the trial court [as to criminal contempt] if supported by substantial evidence will not be disturbed on appeal.") We do not find necessary an extended discussion of appellant's assets. Suffice it to say that appellant's salary, after taxes, in 1987,[2] was $359,000. He contends that his salary was put back into his corporations. He owns or owned three. He says one corporation "has gone down the drain," the second has been sold and the third is under a six month purchase and sale agreement. He, essentially, contends, however, that any monies from these assets are committed to creditors, including the Internal Revenue Service.[3] Nonetheless, aside from his corporations, the appellant owns a campground, which he valued at, at least, $820,000, and which, according to the government and not disputed by appellant, has no mortgage. Finally, though we need paint this lily no further, we note that appellant posted a cashier's check in the amount of $75,000 in order to argue, on appeal, that he lacks the financial ability to pay a $60,000 criminal fine.

The remainder of appellant's arguments need little discussion. The show cause order complied with Fed.R.Crim.P. 42(b) and provided sufficient notice of the facts upon which the allegation of contempt was based.[4] Contrary to appellant's assertion, the district court did not fail to rule on his

---

**2.** He was convicted in January 1988.

**3.** We are in full agreement with the district court's statement that the appellant "accorded the government least favored status as one of his creditors; dependent upon when, in his judgment, he believed economic conditions, as

far as he was concerned, would dictate when the fine was paid."

**4.** To the extent that appellant's complaint as to the show cause order can be read as an argument that that order did not specifically denominate that the finding of contempt sought by the

motion to dismiss or for summary judgment and his motion to stay the fine. Obviously, the court denied these motions in finding the appellant in contempt. The appellant's claim that the trial court did not afford him the opportunity to present his defense, "other than to allow him to verbally present his case in open court," is belied by the record, which includes the documents submitted by the appellant. Moreover, appellant did not ask to call any witnesses and, even at this point, does not suggest what further relevant evidence he should have been allowed to present. Nor does appellant's claim that he was prevented from showing that he made a good faith effort to comply with the court's order have any merit.

In sum, we conclude that there was substantial evidence to support the district court's judgment and it is, therefore,

*Affirmed.*[5]

government was criminal, we note that appellant has not pointed to any particular prejudice from this. The government's application for an order to show cause why the appellant should not be held in contempt clearly indicated that a finding of criminal contempt was being sought and appellant's response to the government's application clearly shows that appellant was aware of this. Moreover, Rule 42(b) contains no "rigorous" requirement that a show cause order describe the finding of contempt sought as criminal. *United States v. Mine Workers of America,* 330 U.S. 258, 297–98, 67 S.Ct. 677, 697–98, 91 L.Ed. 884 (1947); *In re Grand Jury*

*Proceedings,* 875 F.2d 927, 932 n. 4 (1st Cir. 1989).

5. The order required appellant to pay the required sum by April 30, 1990, or be sentenced to 5 months and 29 days in prison. The appellant posted the bond on April 26, 1990, apparently thereby staying the incarceration. We leave it to the district court to determine whether appellant is entitled, at this point, to any time in which to pay the fine plus interest, fees, and costs and, thereby, avoid imprisonment.