UNITED STATES, Appellee,

v.

**John A. MARQUARDO, Defendant, Appellant.**

No. 97–1486.

United States Court of Appeals, First Circuit.

Heard Feb. 25, 1998.

Decided July 17, 1998.

---

Henry D. Katz, for Defendant, Appellant.

Fred M. Wyshak, Jr., Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, and Andrea N. Ward, Assistant United States Attorney, were on brief for Appellee.

Before TORRUELLA, Chief Judge, BOUDIN and LYNCH, Circuit Judges.

TORRUELLA, Chief Judge.

Among other matters, this appeal raises issues that require us to focus on the diverse nature of civil as compared to criminal contempt, and on the consequence of such differences in the context of allegations of due process and double jeopardy violations. Appellant also challenges the validity of the criminal contempt statute, 18 U.S.C. § 401(3), alleging that it is unconstitutionally vague, claims that his motion for acquittal was improperly denied by the trial judge in that the government failed to prove his willfulness to commit the charged crime beyond a reasonable doubt, and lastly, contends that he was improperly sentenced under the obstruction of justice guideline, § 2J1.2, rather than the purportedly more analogous § 2J1.5, which deals with failures to appear by a material witness. We consider these issues *seriatim*, and ultimately conclude that the rulings of the district court should be affirmed in all respects.

## I. *Relevant Background*

In April 1993, appellant was subpoenaed to testify before a grand jury convened in the United States District Court for the District of Massachusetts. On this occasion appellant declined to testify, invoking his Fifth Amendment privilege against self-incrimination. Thereafter, the Government moved the district court for an order pursuant to 18 U.S.C. §§ 6002 *et seq.*, granting appellant immunity and compelling his testimony. This motion was granted, and an order issued to that effect on May 7, 1993.

On May 20, 1993, appellant was again summoned before the grand jury and a copy of the May 7th order was served upon him and his attorney. Nevertheless, appellant refused to comply with the order and to give evidence before the grand jury. On that same day, shortly after his refusal, a hearing was conducted before the district judge, at which time appellant again reiterated his refusal to comply with the May 7th order and to testify before the grand jury. He was thereafter adjudged in *civil* contempt by the district judge and pursuant to the civil contempt statute, 28 U.S.C. § 1826, was committed to federal custody until such time as he

obeyed the May 7th order, or until the expiration of the grand jury, whichever event occurred first. The order granted appellant two weeks within which to report to the U.S. Marshal to start his confinement, and thus he actually commenced his detention on June 4, 1993.

As things would have it, the grand jury's commission expired on September 12, 1994, without the benefit of appellant's testimony. Appellant thus remained in custody without purging his contempt from June 4, 1993, to September 11, 1994, when he was released from civil incarceration. Approximately two years later, however, on May 7, 1996, another grand jury returned an indictment against appellant charging him with *criminal* contempt, for his failure to comply with the May 7, 1993 order in violation of 18 U.S.C. § 401(3).

Appellant moved to dismiss the indictment, alleging that his prosecution was barred on double jeopardy, vagueness, and fair warning/due process grounds. These contentions were rejected by the district court. After a brief bench trial appellant was convicted on December 18, 1996, and thereafter was sentenced to fifteen months' imprisonment on March 25, 1997. This appeal followed.

## II. *Double Jeopardy*

The Double Jeopardy Clause of the Fifth Amendment of the Constitution of the United States provides that no person "shall be subject for the *same offense* to be twice put in jeopardy of life or limb." U.S. Const. amend. V (emphasis supplied). This provision protects persons against multiple prosecutions or punishments for the *same offense. See United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

■ In a nutshell, appellant argues that because he was "punished" by 17 months' incarceration pursuant to the civil contempt order issued May 20, 1993, he cannot be also punished criminally for the same offense. *See United States v. Ursery,* 518 U.S. 267, 273, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). This is an allegation that clearly misconstrues the distinction between civil and criminal contempt, as well as fails to take into

account longstanding unmodified precedent that exists in this area of the law. *See, e.g., Shillitani v. United States,* 384 U.S. 364, 368, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *Yates v. United States,* 355 U.S. 66, 74, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957); *United States v. Nightingale,* 703 F.2d 17, 19 (1st Cir.1983). Appellant was neither "punished" for his civil contempt, nor prosecuted for the "same offense" when he was later charged and convicted for criminal contempt, notwithstanding that both contempts arose out of the same operative facts. This conclusion becomes clearly apparent when one considers the nature and purpose of civil versus criminal contempt, as well as the consequences that flow from a judicial finding in each case.

■ The purpose of *civil* contempt is to *coerce compliance* with an order of the court. *See G. & C. Merriam Co. v. Webster Dictionary Co.,* 639 F.2d 29, 40 (1st Cir.1980). The subjects of the court's order have "the keys [to their] prison in their own pockets." *Shillitani,* 384 U.S. at 368, 86 S.Ct. 1531. They can be incarcerated for no time, if there is compliance before custody commences; for some time, if there is submission to the order after incarceration begins; or for as long a time as the grand jury is extant, if there is unrepented contumacy. In any event, it is totally clear that incarceration for civil contempt is *not* for the purpose of *punishing* recalcitrant respondents but rather is the modern "persuasive" tool that is used in substitution of the barbaric placing of stones on the subject's chest, which was formerly used to literally press the recipient into submission. *See* J. Langbein, *Torture and the Law of Proof* 74–76 (1977); *see also* L. Levy, *The Origins of the Fifth Amendment* 276–277 (1968). Incarceration for civil contempt only seeks acquiescence to a court's order, not retribution for noncompliance with its command.

■ *Criminal* contempt, on the other hand, is used to *punish disobedience* with a judicial order, and thus vindicates the authority of the court. *G. & C. Merriam Co.,* 639 F.2d at 40. This crime is completed when contumacious conduct has taken place, regardless of whether the subject later complies with the order he or she had earlier

violated. That is, once the subject of an order willfully refuses to meet the court's order, criminal contempt has been committed independently of whether this conduct receives the additional attention of the court by the issuance of a civil commitment order seeking compliance. For example, in its May 20, 1993 order, the district judge in this case found appellant in "willful failure to obey the Order" of May 7, 1993, and directed his commitment to the custody of the Marshal until such time as he complied, or the grand jury's term expired, which ever occurred first. The district judge granted appellant two weeks to report to begin his incarceration. Had he complied with this order before he reported to the Marshal, the civil commitment would have become automatically ineffective, yet he would still have been subject to a criminal contempt charge because that offense was consummated once he willfully failed to comply with the May 7th order.

The distinction between civil and criminal contempt is not limited to the difference in the purposes served by each, the first being remedial, the second being punitive. Clearly, this differentiation emphasizes the crucial condition that only criminal contempt is an "offense," which is the relevant language used by the Double Jeopardy Clause. However, there are also variances in the technique and scope within which they traditionally operate.

Although in the present appeal both the civil and criminal contempts arise within the context of criminal matters, this is neither a *sine qua non* nor probably its most common setting. A frequent scenario for *civil* contempt situations arises as a result of the exercise of the courts' equity jurisdiction, in which the coercive tool is often periodic (daily, weekly, etc.) monetary fines, tailored to *compensate* the party aggrieved for the damages suffered as a result of the contumacious conduct of the noncomplying party. *See International Union v. Bagwell,* 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). The payment of such civil fines by one party to another, a common technique used by courts

not only to force obedience, but also to remedy the harm caused, emphasizes another basic distinction between civil and criminal contempt. In the latter, what is sought, as in the case of all criminal charges, is the vindication of public rights. Thus, if criminal fines are imposed in addition to or in substitution for incarceration, they cannot be used for the purpose of compensating an aggrieved party. They are directed towards punishing the crime that has already been committed, and to act as a deterrent against future violations. Because these criminal monetary penalties are not related to compensation, but are instead punitive, they need not be geared to the actual damages caused, and are only limited by the parameters of the sentencing discretion allowed for that crime. On the other hand, a civil fine, which seeks to compensate the aggrieved party, must bear some relationship to the damages being suffered, and for this reason is considered remedial rather than punitive in nature.

Conversely, *civil incarceration* must be tied to corrective measures, that is, the *curing* of the contumacy by compliance with the violated order. Such is the present case. Appellant's civil detention, which turned out to last 17 months by his choice, sought *curative* results, namely, compliance with the order. By the time of his civil detention, appellant had already independently committed the crime for which he is presently charged and convicted; namely, *criminal* contempt.[1] At that point he could no more turn back the clock on his actions than, for example, a robber could avoid being convicted of bank robbery by returning the loot to a bank he had robbed. Or perhaps more on point, he is entitled to no more success in his present contention, than if he sought to raise a double jeopardy defense to criminal bank robbery charges after losing a civil law suit in which the bank sought the return of stolen money from appellant. One proceeding takes place in a civil setting, while the other is criminal in nature.

---

1. We express no opinion as to whether the violation of an order giving rise to a finding of civil contempt is necessarily also criminal contempt. In particular, we do not address the situation presented by orders imposing sanctions for abuse of the discovery process or for violation of pretrial orders, under Fed.R.Civ.P. 26 & 37.

Simply put, the Double Jeopardy Clause prohibits sequential *criminal* prosecutions or sanctions. It does not bar simultaneous or sequential civil and criminal proceedings even if they arise out of the same factual setting. A *civil* contempt proceeding for the purpose of seeking compliance with an order of the court, whether it brings about the imposition of coercive, nonpunitive fines, and/or imprisonment subject to release by purging of the contempt, is *not* criminal in nature, *see Shillitani,* 384 U.S. at 371, 86 S.Ct. 1531, it is a *civil* proceeding to which jeopardy does not attach.

Although appellant recognizes in his brief the compelling force of the Supreme Court's decision in *Yates,* 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95, he argues that the holding in *Yates* must be tempered by the more recent one in *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135. In *Yates,* it was specifically ruled that given that "[t]he civil and criminal [contempt] sentences served distinct purposes, the one [being] coercive, the other punitive and deterrent . . . [,] that the same act may give rise to these distinct sanctions presents no double jeopardy problem," 355 U.S. at 73, 78 S.Ct. 128. We are unable to find any support for appellant's position in *Ursery,* or for that matter, in any other case that we are aware of. In fact, if anything, *Ursery* lends additional support to *Yates* on the point at issue.

*Ursery* deals with the double jeopardy effect of civil forfeiture proceedings on parallel or subsequent criminal processes arising out of the same operative facts leading to the civil forfeiture. The Court's ultimate conclusion that civil forfeitures are "neither 'punishment' nor criminal for purposes of the Double Jeopardy Clause," 518 U.S. at 292, 116 S.Ct. 2135, closely tracks the present situation as regards civil contempt, for this is exactly what we are ruling in this appeal. *Ursery,* therefore, is not of much help to appellant's position. *Cf. United States v. Bajakajian,* —— U.S. ——, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (reiterating that the Double Jeopardy clause does not bar institution of civil forfeiture actions after criminal conviction, but holding that a criminal fine must be "proportionate" to the offense under the Excessive Fines clause).

The two alternative tests indicated in *Ursery* for determining the civil/criminal nature of a proceeding are: (1) whether Congress has expressed its intention in the relevant statute as to the nature of the proceeding, or (2) even if there is an expression in the statute that it is civil in nature, whether there is "the clearest proof" that the resulting imposition is "so punitive either in purpose or effect" as to require the conclusion that the measure is punitive rather than remedial in nature. 518 U.S. at 289 n. 3, 116 S.Ct. 2135.

Both of these tests militate against appellant's position. Undoubtedly, 28 U.S.C. § 1826 evinces Congress's intention that the proceedings promoted thereunder be civil in nature. Similarly, far from a showing that the civil incarceration in this case presented "clear proof" of a punitive purpose or effect, the very fact that appellant's civil imprisonment was subject to his control and choice manifests an unmistakable distinction from the imposition of a criminal sanction, in which the defendant lacks any decisive control as to the duration of his punishment. *See Shillitani,* 384 U.S. at 368, 86 S.Ct. 1531; *United States v. Michaud,* 928 F.2d 13, 15 n. 1 (1st Cir.1991).

For the reasons stated above we reject appellant's double jeopardy challenge.

### III. *Due Process Allegations*

#### A. *Void for vagueness arguments*

The Due Process Clause of the Fifth Amendment requires that a criminal statute be found "unconstitutionally vague if it 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by [the] statute.'" *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *see also United States v. Angiulo,* 897 F.2d 1169, 1178 (1st Cir.1990). The criminal statute in question, 18 U.S.C. § 401(3), authorizes a court "to punish by fine or imprisonment . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." Because no First Amendment con-

cerns are implicated in this appeal, the vagueness challenge is limited by the framework of the specific facts in the record of the case. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n. 7, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *United States v. Bay State Ambulance and Hosp. Rental Service, Inc.*, 874 F.2d 20, 32 (1st Cir.1989); *United States v. Cintolo*, 818 F.2d 980, 996 (1st Cir.1987).

▮ The question before us is thus whether a person of ordinary intelligence in appellant's situation would have understood that refusing to testify before the grand jury in the face of a direct written and oral order of the district judge, would constitute "disobedience or resistance" to a court's "lawful writ, process, order, rule, decree, or command." The answer to this question is self-evident. Both the facts of this case and the plain language of § 401(3) lead inexorably to this conclusion.[2] *See Robinson v. Berman*, 594 F.2d 1, 2 (1st Cir.1979). Moreover, the statute's "application to [the] particular conduct" at issue here—refusal to comply with a court order to testify—is a notoriously known circumstance, well within the general knowledge of the public by reason of the numerous prior criminal prosecutions in this district, this circuit, and throughout the country. *See id.* Lastly, the "unusually high" scienter requirement that must be met by the government in a criminal contempt prosecution, namely that defendant "willfully" disobeyed the order, *see* note 1, "mitigates any vagueness, especially with respect to the adequacy of notice to the defendant[,] that his conduct is prescribed." *Bay State Ambulance*, 874 F.2d at 33.

▮ Appellant nevertheless argues that the statute is unclear because it only criminalizes violations of "lawful" orders, a condition which he claims is difficult to identify. Appellant makes no claim either now or previously that *this* particular order is either

unlawful or unclear, as well he cannot. Consequently, his objection is outside the scope of this Court's "as-applied" review. *See Cintolo*, 818 F.2d at 996. This is particularly the case when one considers that court orders carry an initial presumption of validity which must be subjected to challenge through established procedures, not through unilateral noncompliance. The limited exceptions to this rule, for example, where a court issues an order clearly without jurisdiction over the parties or subject matter, or that is "patently unconstitutional" or "transparently invalid" on its face, *see In the Matter of the Providence Journal Co.*, 820 F.2d 1342, 1347–48 (1st Cir.1986), obviously do not apply to the present circumstances.

The allegations regarding vagueness are not well taken.

## B. *The Alleged Lack of Fair Warning*

In a related variation of the void-for-vagueness argument, appellant contends that he was not given "fair warning" that disobedience of the court order to testify exposed him to potential criminal prosecution and punishment over and beyond the civil sanctions alluded to in the May 7 and 20, 1993 orders. This, he claims, constitutes a due process violation. We understand appellant to claim that he was unaware that by committing a civil contempt he was also engaging in a criminal one, and that there was a duty on the part of someone, presumably the government, or perhaps the court, to advise him of this possibility before he could be held criminally responsible for this conduct.

▮ Appellant's brief is particularly scant in supporting this novel theory. We restate the age-old principle that ignorance of the law is not a defense to its violation. *See Cheek v. United States*, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). Such rare exceptions as exist to this ancient and universal maxim,[3] are patently inapplicable to

---

2. For example, the following conversation demonstrates that appellant was specifically advised that he would be incarcerated if he failed to comply:

 THE COURT: In light of the fact that if you do not give testimony it will result in your incarceration under this order, do you wish to reconsider and take the opportunity to testify?

 (Mr. Launie [appellant's lawyer] and Mr. Marquardo confer).

 MR. MARQUARDO: Not at this time, your Honor, no.

3. Under Roman law, the maxim *ignorantia juris non excusat* ("ignorance of the law excuses not") was a well-established principle, *see* Ulpian, *Ad*

the present circumstances. *See United States v. Anzalone*, 766 F.2d 676, 678 (1st Cir.1985); *cf. Ratzlaf v. United States*, 510 U.S. 135, 149, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (acknowledging "the venerable principle that ignorance of the law generally is no defense to a criminal charge"). In particular, appellant's inherently tenuous position is weakened even further by the fact that he was assisted by counsel at all relevant times. The assistance of counsel, of course, is not required but merely serves to frame appellant's fallacious claim.

 There is nothing unique about the law of criminal contempt that sets it outside the standard established for the majority of the criminal law that ignorance of its strictures does not excuse noncompliance. *See United States v. Remini*, 967 F.2d 754, 758 (2d Cir.1992).[4] There is furthermore nothing in the Due Process Clause that requires a court to give notice that criminal contempt charges may be brought after a witness is held in civil contempt. *See United States v. Monteleone*, 804 F.2d 1004, 1008 (7th Cir.1986); *United States v. Petito*, 671 F.2d 68, 73 (2d Cir.1982). In this regard, *In re Grand Jury Proceedings, Ortloff*, 708 F.2d 1455, 1458 (9th Cir.1983), relied upon by appellant, is inapposite.

Finally, we note that district judges may find it useful to warn a defendant explicitly that his refusal to comply with an order exposes him not only to civil contempt, but also to criminal contempt. After all, giving such warnings will only increase the likelihood that the orders will be obeyed. This practice is in no way inconsistent with our holding in this case, which is merely that such warnings are not required by law.

## IV. *Allegation of Failure to Prove Lack of Willfulness Beyond a Reasonable Doubt*

Appellant contends that his motion for acquittal should have been granted because the Government failed to prove beyond a reasonable doubt his lack of good faith in refusing to comply with the court's order to testify. The basis for this contention is a motion filed by appellant's third consecutive counsel, seeking to vacate or suspend the order of contempt.

This motion was filed *after* appellant was found in violation of the district court's order. It is grounded on the contention that although appellant had been granted use immunity, and thus could not validly claim a Fifth Amendment-based privilege because he had allegedly been the subject of an illegal wiretap and was thus an "aggrieved person" under 18 U.S.C. § 2510 *et seq.*, he had "other valid grounds" for remaining silent pursuant to *In re Lochiatto*, 497 F.2d 803, 808 (1st Cir.1974). *See also Gelbard v. United States*, 408 U.S. 41, 59, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

Appellant concedes that he failed to raise this matter before the district judge as a defense to the issuance of the finding of contempt and the issuance of the civil contempt order. Appellant nevertheless claims that he had not waived this right and could raise this issue as a defense to the criminal contempt charge under *Gelbard*.

The record in this case establishes that conversations attributed to appellant were intercepted pursuant to court-authorized electronic surveillance. Appellant and his then counsel of record were informed of this matter prior to the May 20, 1993 hearing. Although entitled to receive the supporting documentation related to this electronic surveillance, appellant never requested it, apparently as part of a negotiated agreement with the Government which, in exchange, allowed him to be released on his own recognizance for two weeks after his being found in civil contempt, rather than the usual 48 hours, which is the practice in the District of Massachusetts.

---

*Edictum* 18, that was eventually adopted into the common law. *See* 4 Blackstone, *Commentaries On The Law of England*, 27.

**4.** The "willfulness" required for criminal contempt is the knowledge that one is violating a court order, not the knowledge that the violation of the order is a crime. *See Remini*, 967 F.2d at 757–58; *see also United States v. Berardelli*, 565 F.2d 24, 30 (2d Cir.1977).

The motion giving rise to the present controversy was filed on June 3, 1993, the day before appellant was due to report to the U.S. Marshal to commence his civil contempt detention. This was the first time that appellant claimed entitlement to *Lochiatto* rights. A hearing was held that same day before the judge who issued both the immunity and civil contempt orders. After considering the argument of counsel, the court rejected appellant's contention that he had not made a knowing waiver of his rights as to *Lochiatto* discovery, and refused to reopen or reconsider the civil contempt order. Nevertheless, although appellant was incarcerated, the Government produced the electronic surveillance materials to which he would have been entitled under *Lochiatto*. No challenge of any nature was ever made to the validity of the wiretap, nor was an appeal taken from the civil contempt order or the court's denial of the motion to vacate or suspend the same.

Appellant next raised the *Lochiatto* issue at the time of his criminal contempt trial, when he again claimed that the civil contempt order was invalid because *Lochiatto* had not been complied with. The district judge again ruled that this matter had to be raised before the contempt order issued, and not having been timely raised, was considered waived. Thereafter the district court ruled that the Government had met its burden of proving that appellant acted knowingly and willfully in disobeying its order. As part of this finding, the court determined that good faith (or the lack thereof) was only one factor to be weighed in determining whether the element of willfulness beyond a reasonable doubt had been met.

In *Lochiatto,* a witness before the grand jury who had been granted use immunity refused to testify, alleging that the inquiry of the government was the "fruit" of an illegal wiretap. *See* 497 F.2d at 805. In this case, the government admitted the existence of electronic surveillance but asserted that all information brought before the grand jury was the product of court-authorized wiretaps. The district court rejected the various *Lochiatto's* defendants request for discovery of the supporting documentation and proceeded to hold them in civil contempt. We reversed this ruling, holding that upon a proper request, the witness was entitled to inspect the appropriate documentation surrounding the issuance of the wiretap, *e.g.,* the application, the supporting affidavits, the court order itself, and the government affidavit indicating the length of time the surveillance was conducted.

■■■ The distinction between *Lochiatto* and the present situation is apparent. To begin with, the Lochiattos made a timely request for the wiretap information *before* the district court found them to be in contempt. Although we will not attempt to delineate all possible scenarios regarding waiver of rights, the present circumstances spell out a waiver of *Lochiatto* rights not only because appellant failed to request disclosure of the wiretap information before the contempt ruling, but also because appellant took this action as a result of a bargain with the government in exchange for which he was allowed additional time to report for his civil incarceration. There is no question that appellant made a conscious choice not to contest the issue.

A further significant difference from *Lochiatto* lies in the action taken by the Lochiattos upon their being found in contempt of the court's order. They did not sit back in defiance, but instead followed orderly procedure, appealed, and were thus able to reverse the ruling because they had saved their rights. In the present case not only did appellant fail to do the latter, but, even after receiving the discovery to which he would have been entitled, he did nothing except sit in jail in contumacious resistance. He did not in any legal manner challenge the lawfulness of the order by seeking its revocation on appeal. He waited until criminal charges were brought and then attempted to collaterally question the legitimacy of the civil contempt finding, on grounds already rejected in that prior proceeding. Nothing in *Lochiatto* or any other case that we are aware of supports his position.

■■■ We should further add that appellant cites no cases in support of his contention that proof of the absence of a good faith basis for refusing to comply with a court order is a separate element of criminal

contempt. In fact the cases are to the contrary. *See, e.g., Remini,* 967 F.2d at 757–58 (Good faith misunderstanding of the law, including good faith reliance on the advice of counsel, is not a defense to a criminal contempt charge); *Michaud,* 928 F.2d at 15; *United States v. Underwood,* 880 F.2d 612, 618 (1st Cir.1989); *United States v. Armstrong,* 781 F.2d 700, 706 (9th Cir.1986); *United States v. Rylander,* 714 F.2d 996, 1003 (9th Cir.1983). Additionally, the evidence in the record, when viewed in the light most favorable to the verdict, *see United States v. Akinola,* 985 F.2d 1105, 1109 (1st Cir.1993), amply supports the finding that appellant's refusal to comply with the May 7, 1993 order to testify before the grand jury was not only willful, but clearly without any good-faith basis.

Appellant's motion for acquittal was properly denied.

## V. *The Application of the Proper Sentencing Guideline*

Appellant was convicted of criminal contempt under 18 U.S.C. § 401. There is no specific sentence mandated for this offense. The applicable Guideline for this offense is provided by · § 2J1.1, which directs that § 2X5.1 be used. That section in turn directs the use of the guideline for the most analogous offense. The district court concluded that the obstruction of justice guideline, § 2J1.2, is the most analogous. Appellant disagrees and espouses § 2J1.5, which deals with non-appearing material witnesses, as being the applicable provision.

 The first issue Marquardo appears to raise is whether U.S.S.G. § 2X5.1, which requires the court to apply the guideline for "the most analogous offense," excludes, in a case of criminal contempt for refusal to testify before a grand jury, a district court from turning to § 2J1.2 (obstruction of justice) as the most apt analogue. To state the proposition is to reveal its frivolity. The question of the most appropriate analogy is essentially a question of fact, at most a mixed question of law and fact, and we give deference to the district court's factual determinations. *See United States v. Phath,* 144 F.3d 146, 149 (1st Cir.1998).

 The evidence submitted to the trial court was to the effect that appellant was a bookmaker who was privy to evidence of the extortion activities of members of the so-called Winter Hill Gang. This gang and its members were under investigation by the federal grand jury before whom appellant ultimately refused to testify regarding these extortion activities. The district court found that:

> [t]his is not like a case involving failure of a witness to comply with a subpoena to testify at trial. The refusal of this defendant to answer a grand jury inquiry to him about his knowledge of the Winter Hill Gang interfered with grand jury proceedings bearing upon organized crime activities of large scope.

Based on the record in this case we can perceive no error in this conclusion, much less. clear error. We might add that although this is a matter of first impression in this circuit, other courts of appeal have upheld the application of § 2J1.2 to criminal contempt convictions on similar findings. *See, e.g., United States v. Voss,* 82 F.3d 1521, 1531 (10th Cir.1996).

Appellant's reliance on *Underwood,* 880 F.2d at 620, is misplaced, for in suggesting in that case that § 2J1.5 was more closely analogous to that defendant's conduct, the *Underwood* panel observed that the defendant "did not intend to obstruct justice" but was afraid that the his testimony would be used against him in a pending case of his own before the same district judge. As subsequent courts have concluded, the facts in *Underwood* made it "a special case." *Remini,* 967 F.2d at 760. We reiterate that the question of which is the most appropriate analogy depends on the facts of the case. It follows that, in some cases, criminal contempt findings · might· not be covered by § 2J1.2 as "obstruction of justice" conduct. On occasion, a district judge may find another analogy more apt to the facts in the case at bar, and, if so, the choice will be reviewed for clear error.

Here, however, the district court found that "[Appellant] knew that his refusal to answer a question of the grand jury about his

association with the Winter Hill. Gang ... would have an adverse effect upon and would obstruct the grand jury proceedings." Nothing further is required considering the standard of deference that is due to a district court's decisions in a criminal contempt setting, in which the trial judge is uniquely in a position to assess the circumstances of defendant's actions. *See Voss*, 82 F.3d at 1531.

We have considered all other issues raised by appellant and find them lacking in merit.

Appellant's appeal is dismissed and his conviction is **affirmed.**