# United States Court of Appeals
## For the First Circuit

No. 00-2456

UNITED STATES OF AMERICA,

Appellee,

v.

ALPHONSE MOURAD,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Torruella, Circuit Judge,

Coffin, Senior Circuit Judge,

and Lipez, Circuit Judge.

Joseph S. Berman, with whom Berman & Dowell was on brief, for appellant.
Denise Jefferson Casper, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

May 14, 2002

**Per Curiam.** Defendant-appellant Alphonse Mourad was convicted of criminal contempt for violating a court order. He appeals this conviction, claiming that the order was void and that his violation of it was not willful. Because we find that the order was not "transparently invalid," was in effect on the date of its transgression, and was willfully violated, we affirm the appellant's conviction.

## I.

Alphonse Mourad was the president, sole shareholder, and director of V&M Management, Inc. ("V&M"), which owned a low-income apartment complex in Roxbury, Massachusetts. On January 8, 1996, Mourad filed for Chapter 11 bankruptcy on behalf of V&M. During the ensuing litigation in the bankruptcy court, the appellant, as a result of his dissatisfaction with certain legal rulings, filed a number of motions requesting Chief Judge Kenner, the presiding judge, to recuse herself. Then, on November 5, 1998, Mourad filed an "Emergency Motion to Be Imprisoned, and To Go On A Hunger Strike Protest Until Judge Kenner Rules on Mourad's Six Motions That Have Been Pending Since January of 1998." On November 13, 1998, the appellant followed this with an "Emergency Motion Vowing Not to Leave Chief Justice Kenner's Courtroom and Be Arrested and Go On A Hunger Strike, Unless She (Kenner) Recognizes His (Mourad's) Claims and Sets Date to Hear His Motions." The bankruptcy court noted that on both November 5 and 13,

1998, the appellant "appeared at the premises of this Court in attempts to disrupt Court business by vowing not to leave the premises of the Bankruptcy Court and courtrooms," which are located on the eleventh floor of the O'Neill building in Boston, Massachusetts.

In response to these disruptive actions, on November 16, 1998, Chief Judge Kenner issued an order barring Mourad "from entering the Eleventh Floor of the O'Neill Building . . . until further order of this Court," except for a hearing scheduled for November 30, 1998 in V&M's bankruptcy case. A copy of the order was both personally served on and mailed to the appellant on November 16, 1998.

After entry of the order, Mourad repeatedly expressed his intention to violate it. Sometime after November 16, 1998, the appellant telephoned Deputy U.S. Marshal Stephen Donaher, telling Donaher that he wanted to be arrested to attract media attention for his case. Then, at the November 30, 1998 hearing before the bankruptcy court, Mourad told the court, "I want to go to prison and stay there and go on a hunger strike today," and "I'm asking you [the court] politely to ask the U.S. Marshal to take me away." On December 8, 1998, the appellant telephoned the pro se clerk of the district court, informing her that he wanted to be taken into custody by the U.S. Marshals. Also in December, 1998, Mourad appeared at the security checkpoint on the eleventh floor of the O'Neill building, where he told

the security officers that he wanted to be arrested. One of the security officers persuaded Mourad to leave.

On May 12, 1999, Mourad, carrying a copy of Judge Kenner's order, appeared at the eleventh floor security checkpoint of the O'Neill building. He informed the security officers that he was there to violate the order and be arrested. Deputy U.S. Marshal Donaher led Mourad to a conference room where he attempted to convince Mourad to leave. After the appellant repeatedly refused, the Deputy Marshal arrested him.

At trial in the district court, Mourad testified that he was confused about whether the order was still in effect when he entered the eleventh floor of the O'Neill building on May 12, 1999. The appellant further testified that he entered the eleventh floor on that day to determine whether another lawsuit that he had filed had been docketed in the bankruptcy court; he denied any intent to get arrested.

The trial judge, determining that the order was not "patently unconstitutional," precluded the appellant from challenging the validity of the order itself under the collateral bar rule. Moreover, the district court, finding that the order was still in effect on May 12, 1999, and that the defendant intentionally violated the order, convicted the appellant of criminal contempt under 18 U.S.C. § 401(3).

**II.**

On appeal, Mourad raises three challenges to his conviction. First, he argues that the district court erred in applying the collateral bar rule to prevent him from challenging the validity and constitutionality of the order. Second, he contends that, contrary to the district court's finding, the order was no longer in effect at the time of its alleged violation. Third, the appellant asserts that there was insufficient evidence to support the district court's finding that he acted willfully in disobeying the court's order.

This Court reviews a district court's criminal contempt finding for abuse of discretion. See United States v. Winter, 70 F.3d 655, 659 (1st Cir. 1995). Within this context, factual findings will be upheld unless there is clear error, but legal questions will be reviewed de novo. See id. Keeping these standards in mind, we turn to the appellant's allegations of error.

**A.**

The appellant's first claim of error is that the district court erroneously applied the collateral bar rule to his case. The collateral bar rule provides that "a party may not violate an order and raise the issue of its unconstitutionality collaterally as a defense in the criminal contempt proceeding." In re Providence Journal Co., 820 F.2d 1342, 1346 (1st Cir. 1986) ("Providence I"), modified on reh'g en banc, 820 F.2d 1354 (1987) ("Providence II"). "Rather, the appropriate method to challenge a court order is to petition to have the order

vacated or amended." Id. The rationale for this rule is "both to protect the authority of the courts when they address close questions and to create a strong incentive for parties to follow the orderly process of law." Id. at 1347. In short, "no man can be judge in his own case." Walker v. City of Birmingham, 388 U.S. 307, 320 (1967) (holding that petitioners, who deliberately violated injunction without first attempting to dissolve injunction, were properly convicted of criminal contempt). Although Mourad acknowledges the general application of the collateral bar rule, he contends that an exception for "transparently invalid" orders prevents its application in this case.

Under this exception, if an order is "transparently invalid," a party may challenge the order's validity or constitutionality as a defense in a criminal contempt proceeding. See Providence I, 820 F.2d at 1347-48. When an order is clearly invalid, the rationale for the collateral bar rule dissolves because "in that instance the court is acting so far in excess of its authority that it has no right to expect compliance and no interest is protected by requiring compliance." Id. at 1347. The appellant argues that the order here is transparently invalid, so that the district court should have allowed him to attack the order's validity.[1]

---

[1] The appellant also asserts that he has met the prerequisite for applying this exception by making a good faith attempt to seek emergency appellate relief from the order. See Providence II, 820 F.2d

-7-

Mourad points to two factors to support his position that the order was transparently invalid: the order's unlimited duration and the lack of procedural due process. He notes that, although a court has the power to enjoin "a party from filing and processing frivolous and vexations lawsuits," any such injunction must be narrowly tailored so as not to offend the individual's right of access to the courts. United States v. Castro, 775 F.2d 399, 408, 410 (1st Cir. 1984) (per curiam). An injunction in effect "until further order of this Court," Mourad argues, is not narrowly tailored. Moreover, the appellant asserts that the order was clearly invalid because it was issued without notice or a hearing, in disregard of procedural due process requirements.

Under our precedent, an order should be considered transparently invalid only if "the court reviewing the order finds the order to have had [no] pretence to validity at the time it was issued." Providence I , 820 F.2d at 1347. In this case, we cannot say that the order is transparently invalid under either of the appellant's proffered theories.

The Bankruptcy Code grants the bankruptcy court broad authority to:

---

at 1355. The appellee disputes that the appellant has made any such good faith attempt. We need not decide this issue since we find the exception inapplicable.

> <u>issue any order</u>, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title . . . shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or <u>to prevent an abuse of process</u>.

11 U.S.C. § 105(a) (emphasis added). The purpose of the bankruptcy court's order excluding the appellant from the eleventh floor of the O'Neill building was to prevent the disruption of judicial proceedings that was threatened by Mourad's behavior. Given that more drastic orders have been upheld under the bankruptcy court's § 105 powers to protect the orderly administration of justice, Chief Judge Kenner's order seems to fall well within the bankruptcy court's general authority, particularly since the appellant was still able to make filings and inquiries with the court by mail or telephone. <u>See</u>, <u>e.g.</u>, <u>In re Casse</u>, 198 F.3d 327, 339, 341 (2d Cir. 1999) (upholding power of bankruptcy court under § 105 to prohibit "serial filer" from future filings for extended time periods to safeguard against abuse of the bankruptcy process); <u>In re Volpert</u>, 110 F.3d 494, 500 (7th Cir. 1997) (affirming bankruptcy court's power to sanction party under § 105 for "unreasonably and vexatiously" increasing the court's workload). Moreover, "[t]he ability to prevent the type of behavior exhibited in this case is necessary if the bankruptcy courts are to carry out efficiently and effectively the duties assigned to them by Congress"

-9-

and "to maintain control of their courtrooms and of their dockets." <u>In re Volpert</u>, 110 F.3d at 500, 501.

Although the appellant does not specifically dispute the bankruptcy court's general authority under § 105, he claims that the order is transparently invalid because its denial of access to the court "apparently was effective in perpetuity." Section 105, however, does not limit the bankruptcy court's authority to issue orders with a set expiration date. <u>See</u> 11 U.S.C. § 105(a). As long as the order is narrowly tailored to curb the litigant's abuse of process, as this order arguably was, it cannot be transparently invalid. <u>See</u> <u>Castro</u>, 775 F.2d at 408-10.

Mourad also bases his claim of transparent invalidity on the lack of due process because no notice or hearing was provided prior to the order's issuance. Although a denial of meaningful access to the courts may constitute a deprivation of a life, liberty, or property interest, thereby triggering due process protections, <u>see</u> <u>Rogan</u> v. <u>City of Boston</u>, 267 F.3d 24, 28 (1st Cir. 2001), that is not the situation presented here. The appellant was only barred from physically entering the eleventh floor of the O'Neill building. Although this did prevent his physical access to the clerk's office, Mourad was still able to file documents with the court either via mail or by hand delivery to the security guards at the entrance to the eleventh floor. The order limited only his ability to be physically present in the bankruptcy

-10-

court; it did not deny him meaningful access to the court. Therefore, due process protections, such as notice and a hearing, were never triggered.

Neither rationale advanced by the appellant convinces us that the bankruptcy court's order had no "pretence to validity." Providence I, 820 F.2d at 1347. As a result, the district court correctly applied the collateral bar rule to prevent Mourad from attacking the order's validity.

## B.

Mourad's second challenge to his contempt conviction is that the order had expired by the time he allegedly violated it. As this presents primarily a legal question, we review the appellant's claim de novo. See Winter, 70 F.3d at 659.

The appellant argues that, on December 23, 1998, Chief Judge Kenner effectively "closed" the bankruptcy case, except for two matters specifically excluded, by granting the Amended Motion for Entry of Final Decree Closing Bankruptcy Case. Thus, after this date, Mourad contends that, with the exception of those two matters, the bankruptcy court was relieved of jurisdiction over the case. As a result, the appellant asserts that the order, which did not relate to the excepted matters, was no longer in effect when he entered the eleventh floor of the O'Neill building on May 12, 1999. We disagree.

First, the December 23, 1998 order did not close the case, as the appellant states.  Rather, the order stated that the case would remain open as to those matters pending on appeal and as to those matters which could still be appealed.  As late as November 10, 1999, almost six months after Mourad's violation of the order, the bankruptcy court noted that there were still pending matters in the case which prevented it from entering a final decree.  Therefore, even in November of 1999 the case was not yet closed.

Second, even if we were to credit Mourad's argument that the bankruptcy case was closed, the court still would not have lost jurisdiction to enforce its order.  See Koehler v. Grant, 213 B.R. 567, 569-70 (B.A.P. 8th Cir. 1997) (stating that "it is well-established that courts retain jurisdiction to enforce their own orders," even after the bankruptcy court has closed the case); accord In re Lemco Gypsum, Inc., 910 F.2d 784, 788 (11th Cir. 1990).

Thus, because the case was not closed and the bankruptcy court had continuing jurisdiction to enforce its orders, the district court properly found that Chief Judge Kenner's order was still in effect at the time of the appellant's entry onto the eleventh floor.

## c.

The appellant alternatively claims that, even if the order was legal and in effect, there was insufficient evidence of a willful violation of the order to support his conviction.  To convict a

-12-

defendant of criminal contempt under 18 U.S.C. § 401(3), the government must prove beyond a reasonable doubt that the defendant willfully violated a lawful order of reasonable specificity. See United States v. Michaud, 928 F.2d 13, 15 (1st Cir. 1991) (per curiam). Mourad essentially argues that the district court erred in finding the willfulness element satisfied because there was no evidence of Mourad's intent on May 12, 1999 to violate the order, particularly since he claims he was unaware on that day of whether the order was still in effect. We review the district court's factual findings for clear error. See Winter, 70 F.3d at 659.

The requirement of willfulness contemplates knowledge that one is violating a court order. See United States v. Marquardo, 149 F.3d 36, 43 n.4 (1st Cir. 1998); United States v. Themy-Kotronakis, 140 F.3d 858, 864 (10th Cir. 1998) (defining willfulness as a "volitional act" committed with knowledge or awareness that it is wrongful). In this case, there was ample evidence to support the district court's finding of willfulness.

Mourad made numerous statements about his intention to be arrested for violation of the order. At the conclusion of the bankruptcy court hearing on November 30, 1998, the appellant stated, "I want to go to prison and stay there and go on a hunger strike today." He then indicated his wish to be arrested: "I'm asking you politely to ask the U.S. Marshal to take me away." Deputy U.S. Marshal Donaher

-13-

provided the court with an affidavit, stating that when the appellant arrived on the eleventh floor of the O'Neill building on May 12, 1999, he "inform[ed] them that he knew he was not supposed to be present in the Bankruptcy Court," and then told Donaher, while showing him a copy of Chief Judge Kenner's order, that "he was there to be arrested." In addition, at the hearing before the district court after his arrest, the appellant stated, "My whole purpose today is to protest Judge Kenner's action," and that he wanted to stay in jail on a hunger strike to attract national attention. Based on the district court's decision to credit this and other evidence, we find no clear error in its finding that the appellant intentionally and willfully violated Chief Judge Kenner's order.

## III.

For the reasons stated above, we affirm the appellant's criminal contempt conviction for violation of the bankruptcy court's order.

**<u>Affirmed</u>**.