136 F.3d 216
 FEDERAL DEPOSIT INSURANCE CORPORATION, in its Capacity as
Receiver of Comfed Savings Bank, F.A., Plaintiff, Appellee,
v.
Rhetta B. SWEENEY and John Sweeney, Defendants, Appellants.
FEDERAL DEPOSIT INSURANCE CORPORATION, in its Capacity as
Receiver of Comfed Savings Bank, F.A., Plaintiff, Appellee,
v.
Rhetta B. SWEENEY, John Sweeney and John Does I-V,
Defendants, Appellants.
 Nos. 97-1383, 97-1417.
 United States Court of Appeals,
First Circuit.
 Submitted Jan. 30, 1998.
Decided Feb. 17, 1998.
 
 Stephen F. Gordon, Stanley W. Wheatley and Gordon & Wise, Boston, MA, on brief, for appellants.
 Joseph F. Shea, Nutter, McClennen & Fish, LLP, Boston, MA, Ann S. Duross, Assistant General Counsel, Colleen J. Boles, Senior Counsel, and Lawrence H. Richmond, Counsel, Federal Deposit Insurance Corporation, Washington, DC, on brief, for appellee.
 Before BOUDIN, STAHL and LYNCH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellants Rhetta and John Sweeney are appealing a final judgment by the United States District Court for the District of Massachusetts which granted appellee Federal Deposit Insurance Corporation ("FDIC") possession of certain properties in Hamilton, Massachusetts now occupied by the Sweeneys. Earlier litigation established that the Sweeneys had defaulted on the loans which were secured by the property occupied by the Sweeneys. See Sweeney v. Resolution Trust Corp., 16 F.3d 1 (1st Cir.1994).[1] We affirm.
 
 
 2
 On appeal the Sweeneys raise three claims. None has merit. The Sweeneys argue that the United States District Court lacked subject matter jurisdiction over this case; that even if that court had jurisdiction, it was required to abstain; and that the district judge assigned to the case erred when he refused to disqualify himself. The Sweeneys raised no defenses in the trial court to the merits of the action and they raise none here.
 
 
 3
 The background to this action is that Mrs. Sweeney, on August 27, 1987, granted a mortgage on real estate located at 776 Bay Road, Hamilton, Massachusetts, to Comfed Savings Bank. On August 27, 1987, Mrs. Sweeney, as Trustee of the Maple Leaf Realty Trust, granted a mortgage on real estate located at 24 Meyer Lane, Hamilton, Massachusetts, to Comfed. The mortgages secured a $1.6 million loan by the bank.
 
 
 4
 The Sweeneys do not, in this appeal, dispute that they had defaulted on their obligation to pay the sums owed and that the lender, or its successor, was entitled to foreclose. A state court jury in March of 1990 awarded Comfed more than $2 million for the Sweeneys' failure to pay the obligation secured by the mortgages. That case was removed to federal court when the Resolution Trust Company ("RTC") took over Comfed. The federal court then entered that state court jury verdict against the Sweeneys in a judgment. The Sweeneys appealed that judgment and lost. See id. Naturally enough, what usually happens--when mortgage payments have not been paid over some period and there is a judgment--happened here. There was a foreclosure. The RTC conducted the foreclosure because it was appointed first the conservator and then the receiver for Comfed. Comfed was one of many banks which failed in New England during this period and was taken over by the RTC.
 
 
 5
 In this appeal, the Sweeneys do not dispute that the foreclosure proceedings were properly done. At the foreclosure, the RTC was the high bidder for the properties, bidding $455,000 for the 24 Meyer Lane property and $334,000 for the 776 Bay Road property. On December 12, 1994, the RTC executed and delivered to itself foreclosure deeds for the properties. On December 31, 1995, the FDIC succeeded the RTC as receiver for Comfed.
 
 
 6
 After the foreclosure, the FDIC, which became the receiver for Comfed, instituted this action for possession of the property. The federal court entered summary judgment for the FDIC. The Sweeneys appealed. This court, before it heard the appeal, ordered the parties to mediate. The mediator reported that the mediation had failed, and this appeal went forward.
 
 
 7
 In this appeal, the Sweeneys also do not dispute that the appointment first of the RTC and then the FDIC as the receiver of Comfed was proper. Nor do they dispute, and indeed they could not, that the FDIC is entitled to exercise the various rights Comfed and the RTC had with respect to the property, including the right to take possession after a foreclosure sale.
 
 
 8
 Nevertheless, the Sweeneys have continued to occupy the properties despite their having failed to meet their mortgage obligations and despite the foreclosure sale.
 
 
 9
 The thrust of the Sweeneys' appeal is that only a state court and not a federal court may award possession of their property following their default and the foreclosure. This argument is constructed around several premises, all of which are simply wrong, as discussed below. This is not, as the Sweeneys would characterize it, simply a routine summary process eviction involving purely private persons and entities in which there is no interest on the part of the federal government. Once Comfed failed and the RTC and the FDIC stepped in, there was a federal interest. The FDIC attempts to protect the people who have put their money into banks when those banks fail and must do so by marshaling the property which rightfully belongs to the bank. See Massachusetts v. FDIC, 102 F.3d 615 (1st Cir.1996).
 
 
 10
 First, contrary to the Sweeneys' contention, the federal district court did have jurisdiction to hear the case. The Sweeneys' argument proceeds from their assertion that the FDIC only claimed that there was federal jurisdiction under 12 U.S.C. § 1819(b)(2)(A). That assertion is factually incorrect. In fact the FDIC alleged there was federal jurisdiction under 12 U.S.C. § 1819(b). That section provides that the FDIC is an "agency of the United States for purposes of section 1345 of Title 28" and § 1819(a) grants the FDIC the power "[t]o sue and be sued." 28 U.S.C. § 1345 grants federal district courts jurisdiction over "all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." Since the FDIC commenced this action, the federal court had jurisdiction pursuant to 28 U.S.C. § 1345. See Federal Sav. & Loan Ins. Corp. v. Ticktin, 490 U.S. 82, 86-87, 109 S.Ct. 1626, 1628-29, 104 L.Ed.2d 73 (1989) (partybased jurisdiction of § 1345 applies to actions brought by agency and does not depend on federal subject matter jurisdiction). Not surprisingly, there is federal jurisdiction under the laws enacted by Congress.[2]
 
 
 11
 The Sweeneys' second claim is that the district court should have abstained from exercising jurisdiction pursuant to the doctrine laid down in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In Burford, the Supreme Court decided that the federal courts should abstain from exercising federal jurisdiction in order not to disrupt a complex administrative scheme created by the state of Texas to administer the extraction of that state's oil reserves.
 
 
 12
 The Burford abstention doctrine applies where a case involves both difficult, complex questions of state law and administration of state law by a scheme of state administrative agencies. When this is the case, involvement by the federal courts may cause confusion, and disrupt the state's efforts to establish a coherent, uniform policy to solve a complex local problem. The danger which Burford abstention avoids is the prospect of a case being decided differently depending upon whether it was heard by state officials and judges or by federal judges. In such a situation, a federal court could potentially undermine the state's administrative process. As we explain below, this case does not pose such a problem. The legal issues in this case are straightforward, and there is no unified state administrative apparatus to disrupt.
 
 
 13
 The Burford abstention doctrine "counsels federal courts 'sitting in equity' to refrain from interfering with 'proceedings or orders of state administrative agencies' when 'timely and adequate state court review is available.' " Fragoso v. Lopez, 991 F.2d 878, 882 (1st Cir.1993) (quoting New Orleans Pub. Serv. Inc. v. City Council of New Orleans, 491 U.S. 350, 360-64, 109 S.Ct. 2506, 2514-16, 105 L.Ed.2d 298 (1989)). That doctrine, again, has nothing to do with this case. This case does not involve interference with the proceedings or orders of a state administrative agency. Nor does it involve the sort of complex administrative scheme at issue in Burford. As we have said: "[A]bstention in the Burford line of cases rested upon the threat to the proper administration of a constitutional state regulatory system." Bath Memorial Hosp. v. Maine Health Care Fin. Comm., 853 F.2d 1007, 1013 (1st Cir.1988) (emphasis in original).
 
 
 14
 The federal district court simply enforced the FDIC's rights, standing in the shoes of Comfed, to gain possession of the property, rights recognized under state law. In a variety of ways, federal courts enforce rights created by state law and there was nothing unusual about the federal court doing so here. The federal court simply applied Massachusetts law regulating the possession of real property. In fact, the Sweeneys had an opportunity for a fuller hearing in federal court than the abbreviated procedures usually followed in Massachusetts summary process evictions.
 
 
 15
 Finally, the Sweeneys claim that the district court judge should have recused himself on the ground that "his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). However, they brought forth no "facts that would create a reasonable doubt concerning the judge's impartiality ... in the mind of the reasonable man." United States v. Cowden, 545 F.2d 257, 265 (1st Cir.1976), cert. denied, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). Mrs. Sweeney argues that remarks made by the judge in a prior proceeding show he was not impartial. The remarks[3] do not show lack of impartiality.
 
 
 16
 Further, judges may form views "on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" and those views "do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). It can hardly be said that such remarks display "deep-seated favoritism or antagonism." The Sweeneys' two other arguments get no further.
 
 
 17
 That Mrs. Sweeney has criticized the judge in public is, of course, her right. But it is not her right, by so doing, to cause the disqualification of the judge. "A party cannot force disqualification by attacking the judge and then claiming that these attacks must have caused the judge to be biased against [her]." 13A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 3542 at 577-78. As we have observed, there is "the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." In re Allied-Signal, Inc., 891 F.2d 967, 970 (1st Cir.1989), cert. denied sub nom ACW Airwall, Inc. v. U.S. District Court for the District of Puerto Rico, 495 U.S. 957, 110 S.Ct. 2561, 109 L.Ed.2d 744 (1990).
 
 
 18
 The Sweeneys' final argument is based on Mrs. Sweeney's assertion that she has engaged in public criticism of a Boston lawyer and that lawyer's father testified at the Judge's Senate confirmation hearing on December 9, 1987. That is too far afield to raise any objective doubt as to the judge's impartiality. Thus, the district court did not abuse its discretion in denying the motion for recusal.
 
 
 19
 It has been almost eight years since the jury found that the Sweeneys owed the $2 million, four years since this court affirmed that judgment, and three years since the foreclosure. Despite that, the Sweeneys have not vacated but have enjoyed the use of the property since then. We have no doubt that even if this action had been in state court rather than federal court the outcome would be the same: the FDIC is entitled to possession of the property.
 
 
 20
 The judgment is affirmed.
 
 
 
 [1]
 The complicated prior litigation history between the parties is outlined in our prior opinion. It suffices to say that the Sweeneys had a full chance to present their arguments that the case should not have been removed to federal court, that they did not owe the $2 million, and that they were entitled to damages based on allegedly unfair and deceptive trade practices by the bank. The Sweeneys lost on all of those claims and those matters are settled. Id
 
 
 [2]
 Federal agencies have certainly sought and procured evictions in federal court. See, e.g., United States v. Young, 806 F.2d 805 (8th Cir.1986), cert. denied, 484 U.S. 836, 108 S.Ct. 117, 98 L.Ed.2d 76 (1987); Pugh v. Farmers Home Admin., 846 F.Supp. 60, 61 (M.D.Fla.1994), aff'd, 74 F.3d 1251 (11th Cir.1995). The case the Sweeneys cite, Glen 6 Assoc., Inc. v. Dedaj, 770 F.Supp. 225, 227-28 (S.D.N.Y.1991), is simply not relevant because it did not involve the FDIC as a party
 
 
 [3]
 In the remarks highlighted by the Sweeneys, the judge commented that he hated to see a family caught up in something which could become a destructive obsession and suggested that plaintiffs attempt to look forward to new projects