UNITED STATES of America

v.

John F. SWEENEY, Jr., Defendant.

No. Crim. 98–10079–REK.

United States District Court,
D. Massachusetts.

April 30, 1999.

Court, much less set forth sufficient facts or detail to support one.

John C. McBride, McBride & Keefe, Boston, MA, John C. McBride, McBride & Keefe, Boston, MA, Stephen F. Gordon, Gordon & Wise, Boston, MA, John C. McBride, McBride and Associates, Boston, MA, for John Sweeney, Jr., defendant.

Timothy Q. Feeley, U.S. Atty.'s Office, Boston, MA, for U.S.

Findings, Conclusions, and Order

KEETON, District Judge.

### I. The Indictment

The one-count indictment in this case charges defendant John Sweeney with criminal contempt. It alleges that he:

did unlawfully, knowingly, and intentionally disobey and resist a lawful order, rule, decree and command of a Court of the United States of America, to wit: the May 29, 1997 and February 19, 1998 orders issued by United States District Judge Edward F. Harrington requiring the defendant to vacate the properties known and numbered as 776 Bay Road and 24 Meyer Lane, Hamilton, Massachusetts. All in violation of Title 18, United States Code, Section 401(3).

Docket No. 6.

### II. The Court Orders of May 29, 1997 and Events Leading to Issuance of the Orders

The court orders of May 29, 1997 granting possession to FDIC and requiring defendant to vacate 776 Bay Road and 24 Meyer Lane (the Properties) followed defendant's default on a mortgage on the Properties and his failure to leave the Properties after a court judgment of possession in favor of FDIC. The mortgage on the Properties was the subject of two separate civil actions in this court between defendant and the Resolution Trust Corporation, and FDIC (as successor to the Resolution Trust Corporation). *See Sweeney v. Resolution Trust Corp.,* 16 F.3d 1, 2–3 (1st Cir.1994), cert. denied, 513 U.S. 914, 115 S.Ct. 291, 130 L.Ed.2d 206 (1994) (holding that removal to federal district court was proper and affirming the district court judgment against Sweeneys).

At a time after all of the foregoing proceedings, Judge Harrington made orders in Civil Action No. 96–11864–EFH and in Civil Action No. 96–11866–EFH on March 6, 1997, directing the Clerk to enter in each case a judgment of possession in favor of FDIC. See Docket entries on Exhibits 28 and 29 for March 6, 1997.

Judge Harrington made orders in Civil Action No. 96–11864–EFH and Civil Action No. 96–11866–EFH on May 29, 1997, approving a request by FDIC for issuance of execution on the judgment, and signing for each case an "EXECUTION FOR POSSESSION AND ORDER TO VACATE," which directed the United States Marshal for the District of Massachusetts or any of her Deputies to cause the FDIC to have possession and cause the Sweeneys (John under one "EXECUTION" and Rhetta under the other) to vacate the Hamilton property immediately. Exhibits 2 and 3.

The text of Exhibits 2 and 3 contains the following directives:

ORDERED that without delay you cause the FDIC to have possession of and in 24 Meyer Lane, Hamilton, Massachusetts.

It is further ORDERED that John Sweeney shall vacate the Property immediately upon receipt of this Execution for Possession and Order to Vacate.

It is further ORDERED that the United States Marshal or any of her deputies shall make service of this Execution for Possession and Order to Vacate on John Sweeney at the Property, and is hereby authorized to remove any occupant of the Property who fails to vacate the property in accordance with this Execution for Possession and Order to Vacate and all personal property therein.

Exhibit 2.

ORDERED that without delay you cause the FDIC to have possession of

and in 776 Bay Road, Hamilton, Massachusetts.

It is further ORDERED that John Sweeney shall vacate the Property immediately upon receipt of this Execution for Possession and Order to Vacate.

It is further ORDERED that the United States Marshal or any of her deputies shall make service of this Execution for Possession and Order to Vacate on John Sweeney at the Property, and is hereby authorized to remove any occupant of the Property who fails to vacate the property in accordance with this Execution for Possession and Order to Vacate and all personal property therein.

Exhibit 3.

As shown in the second and third quoted paragraphs of each of these two exhibits, these orders were addressed to John Sweeney. Docket entries on the Docket Sheets for these two cases show that two more orders with like captions were made and addressed to Rhetta Sweeney. Exhibits 28 (for 96–11866) and 29 (for 96–11864).

The Court of Appeals for the First Circuit affirmed Judge Harrington's judgment in each of the cases, 96–11864 and 96–11866. *FDIC v. Sweeney*, 136 F.3d 216 (1st Cir.1998) (affirming district court judgment of possession in favor of the FDIC), Exhibit 7.

### III. The Court Orders of February 19, 1998 and Events Leading to Their Issuance

I find that the following sequence of additional events led up to issuance by Judge Harrington of the Orders of February 19, 1998.

Before any action was taken by the United States Marshal under the Orders of May 29, 1997, the First Circuit ordered the parties to mediate the matter before the Honorable A. David Mazzone, who was thus acting for and as an officer of the Court of Appeals in the mediation. Acting on behalf of the Court of Appeals, on August 4, 1997, Judge Mazzone issued a

consolidated order in Civil Action Numbers "96–11864" and "96–11866" as follows:

Pursuant to motion of appellee and in response to a request by the United States Marshal, the above-captioned matter has been referred to me for mediation by order of the Court of Appeals for the First Circuit. That mediation is scheduled for August 6, 1997.

In order to address the concerns of all parties that mediation efforts proceed under circumstances that the parties can mediate effectively and in a good faith effort to resolve this matter, it is hereby ordered that the United States Marshal will cease and desist from any efforts to serve and enforce Execution(s) For Possession And Order To Vacate, dated May 29, 1997, on two properties located at 2 Bay Road and Meyer Lane, Hamilton, Massachusetts. This Order will remain in effect pending further order by the Court.

So Ordered.

Exhibit 4.

The phrase "2 Bay Road and Meyer Lane" in the quotation above is as it appears in Exhibit 4. I find, however, that no interested person could have been misled about the fact that the mediation concerned the Properties, as previously identified in these findings and conclusions.

The first mediation session took place in early August 1997, and Judge Mazzone's mediation efforts continued for several months but were, in the end, unsuccessful.

Judge Mazzone then returned the case to the First Circuit on December 29, 1997, by the following order in No. 97–1383 in the Court of Appeals:

By Order of the Court of Appeals for the First Circuit dated July 24, 1997, the parties were ordered to attend mediation before me. To insure that the parties could participate in mediation in good faith and effectively, I issued an order, dated August 4, 1997, to the United States Marshal to cease and desist from any efforts to serve and enforce

Execution(s) For Possession and Order to Vacate, dated May 29, 1997, on two properties located at Bay Road and Meyer Lane, Hamilton, Massachusetts. That order was to remain in effect pending the order of this Court.

After due consideration of this course of mediation over the past several months, I have concluded that further efforts to resolve this case at this time are unlikely to be productive. This case is returned to the Court of Appeals.

Exhibit 6.

Also, on December 29, 1997, Judge Mazzone issued a consolidated order in Civil Action Numbers "96–11864" and "96–11866" (docketed as No. 29 in 96–11864 and docketed as No. 32 in 96–11866) as follows:

By Order of the Court of Appeals for the First Circuit dated July 24, 1997, the parties were ordered to attend mediation before me. To insure that the parties could participate in mediation in good faith and effectively, I issued an order, dated August 4, 1997, to the United States Marshal to cease and desist from any efforts to serve and enforce Execution(s) For Possession and Order to Vacate, dated May 29, 1997, on two properties located at Bay Road and Meyer Lane, Hamilton, Massachusetts. That order was to remain in effect pending the order of this Court.

I have concluded that further efforts at mediation are unlikely to be productive and have returned the case to the Court of Appeals.

Accordingly, the cease and desist order I issued to the United States Marshal on August 4, 1997, is vacated, effective at 5:00 p.m., January 5, 1998.

Exhibit 5.

Defendant John Sweeney continued to remain on the Hamilton property. The United States Marshal and her deputies decided, prudently and appropriately I find beyond reasonable doubt, to delay enforcement while awaiting a ruling of the Court of Appeals on the two appeals pending before it (No. 97–1383 and No. 97–1417 in the Court of Appeals) from Final Judgments of Judge Harrington in 96–11864–EFH and 96–11866–EFH. The Court of Appeals issued its Per Curiam opinion on February 17, 1998. Exhibit 7. The last two paragraphs of that opinion were as follows:

It has been almost eight years since the jury found that the Sweeneys owed the $2 million, four years since this court affirmed that judgment, and three years since the foreclosure. Despite that, the Sweeneys have not vacated but have enjoyed the use of the property since then. We have no doubt that even if this action had been in state court rather than federal court the outcome would have been the same: The FDIC is entitled to possession of the property.

The judgment is *affirmed.*

*Id.* at page 5.

Judge Harrington, on February 19, 1998, issued his consolidated order in 96–11864–EFH and 96–11866–EFH. The text of the order was as follows:

Upon motion of the United States Marshals service, and in furtherance of this Court's Orders dated May 29, 1997, the Court hereby ORDERS all persons present on the properties known and numbered as 776 Bay Road and 24 Meyer Lane, Hamilton, Massachusetts without authorization of the Federal Deposit Insurance Corporation to vacate said properties immediately upon service of this Order by the United States Marshals Service and not return. Service shall be effected either by in hand delivery of a copy of this Order or by posting copies of the Order on the properties in locations to be selected by the United States Marshals Service.

Exhibit 8.

## IV. Enforcement By Deputy United States Marshals Under Direction of the United States Marshal

On February 28, 1998, Deputy United States Marshals forcibly entered Swee-

ney's former residence, arrested him for criminal contempt in violation of 18 U.S.C. § 401, and removed him from the Properties.

Defendant John Sweeney was indicted on the one count of criminal contempt of a court order on March 18, 1998.

## V. Presumptive Validity of Court Orders

█ Defendant attempts to justify his failure to comply with the court orders requiring him to vacate the Properties by attacking the validity of the orders. The government contends that the validity of a court order may not be challenged through noncompliance with the order. Precedent in the First Circuit supports this position. "[C]ourt orders carry an initial presumption of validity which must be subjected to challenge through established procedures, not through unilateral noncompliance." *United States v. Marquardo*, 149 F.3d 36, 42 (1st Cir.1998). The opinion in *Marquardo* acknowledges "limited exceptions" to the presumption of validity applicable to court orders, including one that applies "where a court issues an order clearly without jurisdiction over the parties or subject matter, or that is 'patently unconstitutional' or 'transparently invalid' on its face." *Id.* at 42 (citations omitted).

Defendant contends that his case is within one or more of the exceptions noted in the opinion in *Marquardo*. He argues that the court issuing the order lacked authority to do so because of bias of the judge and improper removal to federal court. Also he contends that the statute under which he was charged is unconstitutional. These very issues, however, as raised by this defendant in this case, have already been decided by the Court of Appeals for the First Circuit. The issue defendant Sweeney raises concerning the judge's bias was considered by the First Circuit and decided against Sweeney in *FDIC v. Sweeney*, 136 F.3d 216, 219 (1st Cir.1998), Exhibit 7. The same is true of defendant's assertion that the federal court was without jurisdiction to hear this action

on grounds of improper removal. *Id.* at 218. Finally, a charge that 18 U.S.C. 401(3) is unconstitutionally vague was also considered and rejected in *Marquardo*, 149 F.3d at 41. These challenges are defeated by precedents directly on point.

## VI. Ancillary Findings and Conclusions in Explanation of the Ultimate Findings Stated in Part VII Below

### A.

My rulings concerning the validity of the indictment are detailed in the Memoranda and Orders of April 12, 1999 and April 20, 1999.

It is true that four separate orders were issued on May 29, 1997, two in each of the two separate civil actions then pending before Judge Harrington, as explained in part II above. But the fact that four separate orders were issued on May 29, 1997 (two addressed to John Sweeney and two addressed to Rhetta Sweeney) does not make the indictment insufficient. John Sweeney and Rhetta Sweeney were both ordered to vacate the Properties. The indictment clearly states the date the orders were issued and the name of the judge issuing them. Defendant, if not already aware of the content of the orders issued by Judge Harrington on May 29, 1997 could easily have obtained additional information if he wished it in the nearly ten months following the issuance of the May 29, 1999 orders and before issuance of the February 19, 1998 order.

Moreover, the indictment is sufficient for the additional, independent reason, that it identifies the date of the one consolidated order of February 19, 1998, and the identity of the judge who made the order.

### B.

Defendant also contends that neither any May 1997 order nor any February 1998 order was ever served on him.

I find beyond reasonable doubt that evidence received at trial proved beyond reasonable doubt that, on February 28, 1998,

(1) federal court orders dated May 29, 1997 and February 19, 1998 were in force, effective, and required defendant to vacate the Properties; (2) defendant had notice of these orders; (3) the consolidated order of February 19, 1998 had been served by posting; and (4) defendant willfully disobeyed these orders.

I so find independently of the evidence received at trial (some of which is recited immediately below) about what occurred during mediation that began in early August 1997 before Judge Mazzone and continued for several months.

I also so find when I do take into account, as well, all of the evidence received at trial about what occurred during the mediation. Deputy United States Marshal Chief Bane testified at trial that defendant stated at mediation before Judge Mazzone in early August 1997 that he (defendant) had not seen the May 29, 1997 order requiring him to vacate the Properties. Chief Bane testified that in response to defendant's statement, Chief Bane presented defendant and his wife with two copies of May 29, 1997 orders. Chief Bane was unable to testify with certainty as to exactly which one or two of the four May 29, 1997 orders were reproduced in the two copies he presented in the early August mediation before Judge Mazzone. I find credible, however, his testimony that he made two copies available to John Sweeney at that time and that each of the two copies was an order to John Sweeney. I find beyond reasonable doubt that a copy of an order directed to John Sweeney was made available to John Sweeney during mediation before Judge Mazzone in early August of 1997.

I find beyond reasonable doubt that, in the period of days immediately following the availability of the copies to John Sweeney in early August of 1997, and again from time to time thereafter, defendant John Sweeney read thoroughly and studied the contents of the two order copies dated May 29, 1997 that were made available to him in early August of 1997. Addi-

tional evidence supporting this finding is recited below.

Copies of Judge Harrington's consolidated order of February 19, 1998 were also made available to John Sweeney before the eviction of February 28, 1998. On February 20, 1998, Nancy J. McGillivray, United States Marshal, signed a document (referred to in oral testimony before me as a letter), of the following content:

TO WHOM IT MAY CONCERN:

Attached is a lawful order issued by the United States District Court for the District of Massachusetts. It requires you to immediately vacate the properties known as 776 Bay Road and 24 Meyer Lane, Hamilton, Massachusetts. A willful violation of such an order can be prosecuted as a criminal contempt pursuant to Title 18, United States Code, section 401. Upon conviction for criminal contempt, you could be subject to either a substantial period of imprisonment or a significant fine.

Exhibit 9.

The Marshal and her deputies attached together sets of copies of Exhibit 9 and Exhibit 8 and distributed them widely. They took steps that caused one set to be served on Rhetta Sweeney in the District of Columbia in the hall just outside a Committee hearing room in the Rayburn office building. They took steps that caused other sets to be posted at various places on the Properties, including an entry gate, on trees located to be especially visible, on a door on the Bay Road house, on a door on the Meyer Lane house, and in other places on or near the Properties.

A photograph in evidence, Exhibit 10A, shows the door where a set was posted on the Meyer Lane house. On Exhibit 10A, through the upper glass of an outer storm door, one may see a paper. Taking into account oral testimony about the posting by deputies, and about observance of a document there by others, including a TV station reporter, and statements made to a TV reporter by John Sweeney on Febru-

ary 27, 1998, I find that the set of copies of Exhibits 9 and 8 posted on the door of the Meyer Lane house came into the possession of defendant John Sweeney not later than several days before February 28, 1998. Thus, not only was service effected by posting but also John Sweeney received a set of Exhibits 9 and 8 in hand.

Deputy United States Marshals made entry into the Meyer Lane house on the afternoon of February 28, 1998, by breaking a glass and reaching through to open one of the "french doors." They found John Sweeney in the house and executed the court's order to remove him.

## C.

Attorney Stephen F. Gordon was first retained in 1996 by John Sweeney to represent him in the civil litigation against John Sweeney. Gordon testified that on February 24, 1998 he caused to be sent by FAX to Mark W. Pearlstein, First Assistant United States Attorney, the following communication:

Dear Mr. Pearlstein:

In accordance with your request, I have no objection to any representative of the United States Marshals Service contacting Mr. John Sweeney by telephone.

Exhibit 12. This communication was received in Attorney Pearlstein's office on Tuesday, February 24, 1998, at approximately 15:51 (or 3:51 p.m.) By FAX, as evidenced by a time notation at the upper left margin of Exhibit 12.

On February 26, 1998, Mr. Pearlstein sent by FAX to Mr. Gordon the following communication:

I am writing to follow up on our recent conversations. In those conversations, you expressed concern that your clients could be criminally prosecuted for refusing to obey the orders to vacate the Hamilton properties (776 Bay Road and 24 Meyer Lane).

It is true, of course, that a willful violation of court orders such as those requiring the Sweeneys to vacate the Hamilton properties can be punished under the Criminal Contempt Statute, 18 U.S.C. § 401. However, our principal objective is to effectuate the various orders to vacate, rather than the prosecution of the Sweeneys. Accordingly, the U.S. Attorney's Office and the United States Marshal's Service state as follows:

1. If Mr. Sweeney were to immediately vacate the Hamilton properties, the United States would not prosecute him for his prior refusal to do so; and

2. No person previously served with an order to vacate, including Mrs. Sweeney, will be prosecuted for their prior occupation of the Hamilton properties. However, an attempt to re-enter the properties would violate the orders, and could result in a prosecution.

Mr. Sweeney needs to vacate the Hamilton properties immediately. Failure to do so could result in criminal prosecution.

Please give me a call to discuss this matter further.

Exhibit 15. This communication was received in Mr. Gordon's law office at approximately 03:16 p.m., the time shown at the top left of the two pages of Exhibit 15A that are marked "P.2" and "P.3" in the upper right corner. The time notation is followed by "USAO Boston," indicating time of transmission from the United States Attorney's Office, and on the basis of oral evidence of Stephen Gordon I find that it was received in his law office within a minute or two, though not necessarily read by him or one of his staff immediately.

On February 25 and 26, 1998, United States Marshal Nancy McGillivray personally telephoned the Properties for the purpose of talking directly to defendant John Sweeney to try to persuade him to leave the Properties peacefully. On at least two occasions John Sweeney answered the telephone and talked with Marshal McGillivray. I credit Marshal McGillivray's tes-

timony that she referred to the Court of Appeals decision of February 17, 1998, then to Judge Harrington's order of February 19, 1998, and that John Sweeney said to her words to the effect, "I know," after she had referred to Judge Harrington's order of February 19, 1998. I credit her testimony, also, that in their last telephone conversation defendant John Sweeney told her his attorneys had advised him not to talk to her anymore and that he intended to follow their advice.

### D.

On February 27, 1998, John Sweeney, standing on an outside porch of the Meyer Lane house, held a press conference with reporters gathered on the ground level just below the porch. In that press conference he made statements disclosing that he knew about Judge Harrington's order of February 19, 1998 and was nevertheless planning not to vacate the Property but instead to continue to consider ways of challenging its validity and enforcement.

### E.

On February 28, 1998, defendant John Sweeney, while alone in the Meyer Lane house, made a tape recording. Following are excerpts from an accurate transcript of that tape recording, which is in evidence as Exhibit 19:

SWEENEY: It is about 10 o'clock and the Marshals have, ah, looks like the phones have been turned off, so I have no outside communication, and, ah, that's where it stands, right now.

. . . . .

Just to go back and, ah, confirm, ah, earlier this morning, ah, the lights, were, the floodlights were taken out sometime after 1 o'clock this morning. Ah, I was able to, ah, Peter DeMarco called me around 6 o'clock and was able to, ah, give me a heads up about something going on at the, down at the other property. The, ah, I was able to talk to Rhetta, Rhetta called

in, I've talked to Faith, the alert list has been forewarned and is in operation. The, ah, thank God Rhetta got the call. I love you hon'. Thank God I got to talk to Faith, I love you hon' and, ah, we, CBS New York actually called, and Channel 7 did a call. We got a number of calls, New England Cable News, all before 10 o'clock. Now that the phone is out, ah, I am going to go into silence.

*Id.*, pages 1–2.

Just saw on the news, it's ah, 3:35, that the, things here taken a flurry of activity. Apparently, ah, the news seemed to think that, ah, people were approaching the house. People have been calling. Faith, others may have been calling, the news said. Something about a lawyer and something about Nancy McGillivray and a bullhorn approaching the house to, ah, to, ah, contact, so it's about 3:35 now, and things seem pretty quiet.

*Id.*, pages 4–5.

It's about quarter of five. It sounds like there is some kind of bullhorn outside that I can't understand. And the phone keeps ringing so we'll just, ah, see what's going on. I can't, ah, looks like the Bronco's back in the front of the, in the back of the Honda, so we, ah, and as I say, it's about quarter of five, so 4:46.

It's, ah, 5 o'clock, it sounds like they're trying to beat the door in, so I'm not sure what's happening. There is some banging on the door. Sounds like the front door.

*Id.*, pages 6–7.

### F.

Exhibits 20A through 20G are printouts made by Deputy United States Marshal Stephen Donaher on a printer in the United States Marshal's offices, by key entries made by deputy Donaher at his computer work station. The date of each printout is shown on the bottom right-hand corner of each Exhibit. The printout shows what

was on an identified part of the website identified as "www.qui–tam.com."

Excerpts from the text of Exhibits 20A–20G, quoted here, make clear that the "qui-tam" website was created for the purpose of aiding John and Rhetta Sweeney in their confrontational resistance to compliance with the orders of Judge Harrington regarding FDIC's right to possession and the order to the Sweeneys to leave the Properties. On the basis of inferences reasonably to be drawn from the contents of Exhibits 20A–20G together with evidence of other statements in evidence made by John Sweeney, including his statements made to David Ropeik in John Sweeney's press conference of February 27, 1998, his statements made to Thomas Moroney in a face-to-face interview on February 19, 1998, and John Sweeney's statements made to Anthony Everett in his face-to-face interview with John Sweeney on January 4, 1998 and in an interview broadcast on TV that evening, I find beyond reasonable doubt that defendant John Sweeney either personally made each of the quoted assertions of fact stated on the qui-tam website, or authorized its being made before it was made by another person on his behalf, or read it after it was made on the website and fully understood it and knew its meaning.

Before reciting the quotation from Exhibit 20A, I state explicitly, to avoid misunderstanding, that I do not draw any inference from the unusual format of the statement following "To all who are concerned...." That format may have occurred in the course of making a printout rather than in the placing of the message on the website.

Exhibit 20A June 2, 1997 reads in part, in the printout format:

*To all who are concerned ...... we need your help.*
At
12:01
AM,
Tuesday
June
3,
1997
a U.
S.
Marshal
siege
will
begin
on
our
home
in
Hamilton, Massachusetts. The FDIC (Federal Deposit Insurance Corporation) have instructed their lawyers to send in U.S. Marshals to seize our home and property, seeking to gain possession through fraud.
WE ARE NOT GOING TO LEAVE OUR HOME OR RELINQUISH OUR RIGHTS.
We are the victims of a crime committed by a lawyer who stole our court
documents and as a result of his intentional actions we are facing the loss of our home and property.
HERE ARE THE FACTS: All of which are on the INTERNET at our Wold Wide Web site Go To: *http://www.qui-tam.com* (click on link *"U.S. Federal Marshals"*)
Page 1 of 3.

They now want to evict us and we have no choice but to stand up and face down this injustice. WE WILL NOT LEAVE OUR HOME OR RELINQUISH OUR RIGHTS and we ask for your help and prayers.
John & Rhetta Sweeney
24 Meyer Lane
Hamilton, MA 01982
508–468–1536

fax 508–468–4428(fax)

Page 3 of 3.

Exhibit 20B July 9, 1997 reads in part:

### Daily Update

DAY 28–34 THRU JULY 6, 1997

Another tense week highlighted by the terse letter received from Acting FDIC Chairman Hove, stating; "while we remain willing to entertain a settlement offer from you, you must first peacefully resolve the outstanding eviction order with the U.S. Marshal Service and leave our property. Once you have vacated our property we will consider a reasonable settlement offer from you as well as other offers from other interested parties."

We are not leaving "our" property and will not relinquish our rights. Given Mr. Hove's position as quoted above and that he has been an active participant in the cover up of the fraud against us for over five years, we have had no choice but to take our settlement offer directly to U.S. Treasury Secretary Rubin, who has jurisdiction over the FDIC. (Click on *Settlement* Talks.)

The U.S. Marshals have taken a sensible and wise position as stated in the Boston Globe, Saturday July 5, 1997. The head of the Marshal Service, Nancy J. McGillivray stated; "we are not going in there while mediation is going on." (Click on *U.S. Marshals* )

Page 1 of 5.

\* \* \* \* \* \*

There has been tremendous interest and coverage over the last four days as this story moves across the country and now internationally. Here is a partial list:

TV: NBC Nightly News, Washington, DC

CBS Evening News, New York, NY

CNN Headline News, Atlanta

King TV, Channel 5, NBC, Seattle, WA

Radio/Newsprint:

London Daily News

"Clapprood & Company", WRKO Boston, MA

"Zoh Show" WBCN, Baltimore, MD

KIRO Seattle, WA

KDKA Pittsburgh, PA

"Joey Mitchell Show" Sacramento, CA

KNUS, Denver CO

WOKQ, NH, ME & MA

Media By–Pass Magazine

Boston Globe, Boston, MA

Boston Herald, Boston, MA

Page 4 of 5.

Exhibit 20C begins as follows:

### MEDIA

### PRESS RELEASE

July 9, 1997

For a history. . . .

Page 1 of 6.

Exhibit 20D January 5, 1998 is a reproduction of Judge Mazzone's court orders of December 29, 1997, in the District Court and Court of Appeals. For matching documents in evidence, see Exhibits 5 and 6.

Exhibit 20E January 8, 1998 is a copy of a letter from FDIC, dated June 30, 1997, to the Sweeneys.

Exhibit 20F January 21, 1998 reads in part:

### Current Update

Day 208–219 (Through Monday, January 5, 1998)

Major media and their television and radio crews are surrounding our property, waiting to see if U.S. Marshals will move in to try to seize our home saying that "they are only following orders". Orders which they know are not valid and have been obtained through **fraud.** WE ARE NOT LEAVING!

MEDIATOR ENDS MEDIATION. . . *Judge's Orders* lift the "cease and desist" restraint of U.S. Marshals as of 5:00PM, Monday January 5, 1998.

*NEW SWEENEY SIEGE CONTACT LIST* with phone numbers, faxes and

emails so you can call and voice your opinion to those that count and need be held accountable. Please also see *"We Need Help"* list.

Page 2 of 2.

Exhibit 20G February 27, 1998

**THERE WAS A PRESS CONFERENCE HELD TODAY, FRIDAY, FEBRUARY 27, 1998, AT THE SWEENEY RESIDENCE WITH JOHN SWEENEY SPEAKING FROM THE BACK DECK OF THE HOUSE. THERE STILL ARE NO ANSWERS TO THE SECRET ORDERS.**

**KEEP WATCHING THIS PAGE FOR NEWS UPDATES!**

**RHETTA SWEENEY LEFT THE PROPERTY SEVERAL DAYS AGO. SHE IS NOW IN WASHINGTON, D.C., DEMANDING ANSWERS FROM CONGRESS. U.S. MARSHALS FOLLOWED HER TO CAPITOL HILL AND SERVED HER PAPERS, STATING THAT SHE MAY NEVER RETURN TO HER HOME.**

Page 1 of 2.

### G.

Also relevant as confirmatory information about official orders in the two cases before Judge Harrington are the following excerpts from Exhibits 28 and 29:

Exhibit 28

Docket entries in 96–11866

3/6/97 24 Judge Edward F. Harrington. Memorandum and Order entered. granting [18–1] motion for summary judgment. Wherefore, the Court grants said motion and enters judgment for the FDIC against the Sweeneys as a matter of law for possession of the subject property and, pursuant to Mass.Gen.L. ch 239 section 3, awards the FDIC its costs incurred in bringing this action. SO ORDERED. cc/cl (seh) [Entry date 03/07/97]

03/06/97 25 Judge Edward F. Harrington. Judgment entered for FDIC against Rhetta B. Sweeney, John Sweeney. cc/cl (seh) [Entry date 03/07/97]

03/06/97 — Case closed. (seh) [Entry date 03/07/97]

05/29/97 — Judge Edward F. Harrington. Endorsed Order entered granting [29–1] request for issuance of execution. REQUEST ALLOWED. cc/cl (seh) [Entry date 05/30/97]

05/29/97 — Writ of execution issued against Rhetta B. Sweeney, John Sweeney, for possession and order to vacate. (seh) [Entry date 05/30/97]

07/24/97 30 Judge A.D. Mazzone. Notice of Hearing/conference: set ADR Conference for 10:30 on 8/6/97 .(ktb) [Entry date 07/25/97]

08/04/97 31 Judge A.D. Mazzone. Memorandum and Order entered. Pursuant to motion of appellee and in response to a request by the U.S. Marshal, the above-captioned matter has been referred to me for mediation by order of the Court of Appeals before the First Circuit. That mediation is scheduled for August 6, 1997. It is hereby ordered that the U.S. Marshal will cease and desist from any efforts to serve and enforce execution for possession and order to vacate dated May 29, 1997 on two properties located at 2 Bay Road and Meyer Lane, Hamilton MA. This order will remain in effect pending further order by the Court. cc/cl (scj) [Entry date 08/06/97]

12/29/97 32 Judge A.D. Mazzone. Memorandum and Order entered. vacating [31–1] cease and desist memorandum order entered on August 4, 1997 effective January 5, 1998 at 5:00 p.m. cc/cl (scj)

| | | |
|---|---|---|
| 12/29/97 | 33 | Judge A.D. Mazzone. Memorandum and Order entered referring this case to the First Circuit Court of Appeals after I have concluded that further efforts to resolve this case are unlikely to be productive, at this time. cc/cl (scj) |
| 01/15/98 | 34 | EX PARTE, in camera Motion by the U.S. Marshals Service to impound, filed. (seh) [Entry date 01/20/98] [Edit date 01/20/98] |
| 01/15/98 | — | Judge Edward F. Harrington. Endorsed Order entered granting [34–1] motion to impound. MOTION ALLOWED. cc/cl (seh) [Entry date 01/20/98] |
| 01/15/98 | 35 | EX PARTE in camera Motion by the U.S. Marshals Service for an order in aid of executions, filed. (seh) [Entry date 01/20/98] |
| 01/15/98 | — | Judge Edward F. Harrington. Endorsed Order entered granting [35–1] motion for an order in aid of executions. MOTION ALLOWED. cc/cl (seh) [Entry date 01/20/98] |
| 01/15/98 | 36 | Judge Edward F. Harrington. SEALED Order entered. cc/cl (seh) [Entry date 01/20/98] |
| 01/15/98 | 37 | Judge Edward F. Harrington. SEALED Order entered. cc/cl (seh) [Entry date 01/20/98] |
| 01/15/98 | 38 | Judge Edward F. Harrington. SEALED Order entered. cc/cl (seh) [Entry date 01/20/98] |
| 01/15/98 | 39 | Judge Edward F. Harrington. SEALED Order entered. cc/cl (seh) [Entry date 01/20/98] |
| 02/17/98 | 40 | Opinion of the Court of Appeals re: [28–1] appeal, entered The judgment is affirmed. (mmh) |
| 02/19/98 | 41 | EX PARTE Motion by USA to impound, filed. (seh) |
| 02/19/98 | 42 | SEALED MOTION by USA, filed. (seh) |
| 02/19/98 | — | Judge Edward F. Harrington. Endorsed Order entered granting [41–1] motion to impound. MOTION ALLOWED. (seh) |
| 02/19/98 | — | Judge Edward F. Harrington. Endorsed Order entered granting [42–1] motion SEALED MOTION. MOTION ALLOWED. (seh) |

Exhibit 29

Docket entries in 96–11864

| | | |
|---|---|---|
| 03/06/97 | 21 | Judge Edward F. Harrington. Memorandum and Order entered. granting [15–1] motion for summary judgment. Wherefore, the Court grants said motion an enters judgment for the FDIC against the Sweeneys as a matter of law for possession of the subject property and, pursuant to Mass.Gen.L. ch 239 section 3, awards the FDIC its costs incurred in bringing this action. SO ORDERED. cc/cl (seh) [Entry date 03/07/97] [1:96cv11864] 03/06/97 22 Judge Edward F. Harrington. Judgment entered for Federal Deposit in 1:96–cv–11864 against Rhetta B. Sweeney in 1:96–cv–11864, John Sweeney in 1:96–cv–11864. cc/cl (seh) [Entry date 03/07/97] [1:96cv11864] |

| | | |
|---|---|---|
| 03/06/97 | — | Case closed. (seh) [Entry date 03/07/97] [1:96cv11864] |
| 03/13/97 | 23 | Objection, memorandum of reasons and request for oral argument by Rhetta B. Sweeney in 1:96–cv–11864, John Sweeney in 1:96–cv–11864 re: [19–1] motion to compel mandatory disclosures, filed. (seh) [Entry date 03/17/97] [1:96cv11864] |
| 03/13/97 | 24 | EMERGENCY Motion by Rhetta B. Sweeney in 1:96–cv–11864, John Sweeney in 1:96–cv–11864 for stay of execution pending appeal, filed. (seh) [Entry date 03/17/97] [1:96cv11864] |
| 03/13/97 | 25 | Notice of appeal by Rhetta B. Sweeney in 1:96–cv–11864, John Sweeney in 1:96–cv–11864 filed. Fee Status: unk Fee Amount: $ unk Receipt # : unk Appeal record due on 4/14/97 (seh) [Entry date 03/17/97] (1:96cv11864) |
| 03/13/97 | — | Notice of Docketing Record on Appeal from USCA re: [25–1] appeal, received. USCA NUMBER: 97–1417:Transfer 97–8024(mmh) [Entry date 04/22/97] [1:96cv11864] |
| 05/29/97 | 27 | Request (non motion) to issue execution filed. (seh) [1:96cv11864] |
| 05/29/97 | — | Judge Edward F. Harrington. Endorsed Order entered granting [27–1] request for issuance of execution. REQUEST ALLOWED. cc/cl (seh) [Entry date 05/30/97] [1:96cv11864] |
| 05/29/97 | — | Writ of execution issued against Rhetta B. Sweeney in 1:96–cv–11864, John Sweeney in 1:96–cv–11864, for possession and order to vacate. of: $ .(seh) [Entry date 05/30/97] [1:96cv11864] |
| 08/04/97 | 28 | Judge A.D. Mazzone. Memorandum and Order entered. Pursuant to motion of appellee and in response to a request by the U.S. Marshal, the above captioned case has been referred to me for mediation by order of the Court of Appeals for the First Circuit. Mediation is scheduled for August 6, 1997. It is hereby order that the U.S. Marshal will cease and desist from any efforts to serve and enforce execution for possession and order to vacate dated May 29, 1997 on two properties located at 2 Bay Road and Meyer Lane, Hamilton MA. This order will remain in effect pending further order by the Court. cc/cl (scj) [Entry date 08/06/97] [1:96cv11864] |
| 12/29/97 | 29 | Judge A.D. Mazzone. Order entered vacating the cease and desist order [28–1] entered August 4, 1997, effective January 5, 1998 at 5:00 p.m. cc/cl (scj) [1:96cv11864] |
| 12/29/97 | 30 | Judge A.D. Mazzone. Memorandum and Order entered referring this case to the First Circuit Court of Appeals after over the past several months, I have concluded further efforts to resolve this case are unlikely to be productive, at this time. cc/cl (scj) [1:96cv11864] |
| 01/15/98 | 31 | EX PARTE in camera Motion by the U.S. Marshals Service to impound, filed. (seh) [Entry date 01/20/98] [Edit date 01/20/98] [1:96cv11864] |
| 01/15/98 | 32 | EX PARTE in camera Motion for order in aid of executions, filed. (seh) [Entry date 01/20/98] [1:96cv11864] |
| 01/15/98 | 33 | Judge Edward F. Harrington. SEALED Order entered. cc/cl (seh) [Entry date 01/20/98] [1:96cv11864] |
| 01/15/98 | 34 | Judge Edward F. Harrington. SEALED Order entered. cc/cl (seh) [Entry date 01/20/98] [1:96cv11864] |

01/15/98 35 Judge Edward F. Harrington. SEALED Order entered. cc/cl (seh) [Entry date 01/20/98] [1:96cv11864]

01/15/98 36 Judge Edward F. Harrington. SEALED Order entered. cc/cl (seh) [Entry date 01/20/98] [1:96cv11864]

01/15/98 — Judge Edward F. Harrington. Endorsed Order entered granting [31–1] motion to impound. MOTION ALLOWED. cc/cl (seh) [Entry date 01/20/98] [1:96cv11864]

01/15/98 — Judge Edward F. Harrington. Endorsed Order entered granting [32–1] motion for order in aid of executions. MOTION ALLOWED. cc/cl (seh) [Entry date 01/20/98) [1:96cv11864]

02/19/98 37 EX PARTE Motion by the USA impound, filed. (seh) [1:96cv11864]

02/19/98 38 SEALED MOTION by USA, filed. (seh) [1:96cv11864]

02/19/98 — Judge Edward F. Harrington. Endorsed Order entered granting [37–1] motion impound. MOTION ALLOWED. (seh) [1:96cv11864]

02/19/98 — Judge Edward F. Harrington. Endorsed Order entered granting [38–1] motion SEALED MOTION. MOTION ALLOWED. (seh) [1:96cv11864]

## VII. Findings and Conclusions as to the Elements Charged

 In order to sustain a conviction on the charge of criminal contempt, the government must prove beyond reasonable doubt each of the following three elements: a lawful court order was in effect; defendant acted or failed to act in a way contrary to what that order required of him; and he did so willfully. I make each of the following findings beyond reasonable doubt:

(1) Each of the federal court orders dated May 29, 1997 and identified more precisely in Part VI above was in force on February 28, 1998, was effective, and required defendant to vacate the Properties;

(2) the consolidated order of February 19, 1998 was in force on February 28, 1998, was effective, and required defendant to vacate the Properties;

(3) defendant had notice of these orders and knew their content; and

(4) defendant willfully disobeyed each of the orders that was directed to him.

I find beyond a reasonable doubt that the May 29, 1997 and February 19, 1998 orders arose from district court decisions that were subsequently affirmed by the Court of Appeals. The language of the orders plainly required defendant to vacate the Properties. Defendant's knowledge of the content of the orders is demonstrated by credible evidence of statements made by him and is confirmed by reasoned inferences I draw about his opportunity to know from credible testimony of Timothy Bane, Earl Day, and Nancy McGillivray. Defendant's knowledge is also confirmed by reports about the orders that appeared on the qui-tam website. Defendant's opportunity to know the content of the February 19, 1998 consolidated order is also confirmed by testimony of the Deputy U.S. Marshal who described posting the order at various places around the Properties, including the front door of the 24 Meyer Lane residence. On the evidence received at trial, I find beyond reasonable doubt that John Sweeney took that opportunity and did know, before February 28, 1998, the contents of the February 19, 1998, consolidated order.

The foregoing findings have been made on the basis of all the evidence received in evidence at trial, but without consideration of any part of that evidence that was re-

ceived subject to limitation for any purpose to which the prohibition or limitation applied.

I have explicitly considered also whether I would make the same findings beyond reasonable doubt if excluding from my consideration the evidence of what occurred during the mediation before Judge Mazzone in early August of 1997. I so find, beyond reasonable doubt.

For all the foregoing reasons, I find the defendant John Sweeney guilty of the offense charged in Count I of the indictment.

A Presentence Report will be prepared, and the Clerk is directed to set a date for the Sentencing Hearing and to issue an order with respect to timely responses to the Presentence Report.