[Cite as *In re Disqualification of Jennings,* 136 Ohio St.3d 1236, 2013-Ohio-3489.]

IN RE DISQUALIFICATION OF JENNINGS.

THE STATE OF OHIO *v*. GONZALEZ.

[Cite as *In re Disqualification of Jennings,* 136 Ohio St.3d 1236, 2013-Ohio-3489.]

*Judges—Affidavits of disqualification—R.C. 2701.03—Disqualification not warranted solely because of judge's passing acquaintance with defendant—Defendant's alleged phone call to judge's daughter not shown to have caused bias or prejudice—Argument for disqualification purely speculative.*

(No. 13-AP-048—Decided June 28, 2013.)

ON AFFIDAVIT OF DISQUALIFICATION in Lucas County Court of Common Pleas Case No. CR12-2997.

_____

**O'CONNOR, C.J.**

{¶ 1}  Ronnie L. Wingate, counsel for defendant Matthew Gonzalez, has filed an affidavit with the clerk of this court under R.C. 2701.03 seeking to disqualify Judge Linda J. Jennings from presiding over any further proceedings in case No. CR12-2997, now pending for trial in the Court of Common Pleas of Lucas County.

{¶ 2}  Wingate alleges that Judge Jennings's participation in the underlying case creates an appearance of impropriety because of (1) the judge's alleged personal connections with Gonzalez, (2) the judge's "incensed" reaction to Gonzalez's alleged phone call to the judge's daughter, and (3) the possibility of additional charges against Gonzalez based on that alleged phone call.

**{¶ 3}** Judge Jennings has responded in writing to the allegations in Wingate's affidavit, stating that she has no bias or prejudice against Gonzalez and pledging to be fair and impartial throughout his case.

**{¶ 4}** For the reasons explained below, no basis has been established to order the disqualification of Judge Jennings.

### Judge Jennings's alleged personal connections with Gonzalez

**{¶ 5}** Gonzalez has been charged with various crimes relating to his alleged video recording of tanning-booth patrons at his hair salon. In his affidavit, Wingate alleges that Judge Jennings was previously a patron of Gonzalez's salon, Judge Jennings's daughter remains a patron of the salon, and the judge's daughter is a friend of Gonzalez and his wife. Wingate also states that while Judge Jennings was in private practice, Gonzalez's brother interned with an attorney in her law office for three years. These personal connections, according to Wingate, raise questions about the judge's ability to preside fairly over Gonzalez's criminal trial.

**{¶ 6}** In response, Judge Jennings states that her hairdresser rented space at Gonzalez's salon nine years ago, and the judge does not recall having any conversations with Gonzalez, other than in passing. Further, Judge Jennings is aware that her daughter, who is 42 years old with her own family, patronized Gonzalez's salon, but the judge has "no knowledge of how long she did so, nor * * * any knowledge of when that patronage terminated." Similarly, the judge has no knowledge of whether her daughter is friends with Gonzalez or his wife. Finally, Judge Jennings recalls that Gonzalez's brother assisted another attorney in her former law office, but that was 13 years ago and she rarely saw him.

**{¶ 7}** "Generally, the more intimate the relationship between a judge and a person who is involved in a pending proceeding, the more acute is the concern that the judge may be tempted to depart from the expected judicial detachment or to reasonably appear to have done so." *In re Disqualification of Shuff,* 117 Ohio

2

St.3d 1230, 2004-Ohio-7355, 884 N.E.2d 1084, ¶ 6. Here, nothing in the record suggests that Judge Jennings has the type of close personal or professional relationship with Gonzalez or his salon that would cause an objective, disinterested observer to question her ability to remain impartial in Gonzalez's criminal trial. *See, e.g.*, *In re Disqualification of Panagis*, 74 Ohio St.3d 1213, 657 N.E.2d 1328 (1989) (judge's "passing acquaintance" with a party or his counsel did not require disqualification); *In re Disqualification of Ellwood*, 74 Ohio St.3d 1241, 657 N.E.2d 1347 (1992), quoting *In re Disqualification of Cross,* 74 Ohio St.3d 1228, 657 N.E.2d 1338 (1991) (" 'The prior professional activities of a judge are not grounds for disqualification when the record fails to demonstrate the existence of a relationship or interest that clearly and adversely impacts on a party's ability to obtain a fair and impartial trial' "). In addition, just as "the mere existence of a friendship between a judge and * * * a party will not disqualify the judge from cases involving that * * * party," *In re Disqualification of Bressler*, 81 Ohio St.3d 1215, 688 N.E.2d 517 (1997), the mere allegation that a party before a judge is a friend of the judge's adult daughter will not result in judicial disqualification.

### Gonzalez's alleged phone call to the judge's daughter

{¶ 8} Wingate next claims that at a recent court conference, Judge Jennings informed the parties that Gonzalez had called her daughter, asked if her mother was a judge, and then requested the daughter to "ask her mother to go easy on him." In a "stern foreboding tone," Judge Jennings, according to Wingate, said to "tell your client to stop calling my daughter." When Wingate inquired how the judge knew that Gonzalez was the caller, she responded: "It was him." Wingate claims that the judge "reacted as any parent, both defensively and incensed," and he questions how she can remain impartial in the underlying case.

{¶ 9} Judge Jennings acknowledges making these comments, but she denies that she acted defensively or that she was incensed, and she does not agree

that her tone was stern or foreboding. Instead, the judge claims that her admonition "was stated simply and matter-of-factly and was stated no differently than it would have been stated to any other counsel representing a defendant on my docket who had improperly contacted a victim or party."

{¶ 10} Nothing about Judge Jennings's disclosure of the improper phone call or her admonition to Wingate seems improper or evidence of bias. To be sure, Jud.Cond.R. 2.11(A)(1) requires that Judge Jennings step aside if she has developed a personal bias or prejudice against Gonzalez based on the phone call. Judge Jennings, however, steadfastly denies any ill will or hostility towards Gonzalez, concluding: "If [Gonzalez] did telephone my daughter, I can set that aside and not consider it for any purpose." "A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Given the speculative nature of Wingate's fears of potential judicial bias, and given Judge Jennings's assurance that she can preside over Gonzalez's trial fairly and impartially, those presumptions have not been overcome here.

{¶ 11} Moreover, the record is unclear about whether Gonzalez actually placed the telephone call to Judge Jennings's daughter. If he did, Gonzalez cannot force disqualification by engaging in such improper conduct and then claiming that the conduct biased the judge against him, unless the judge could not reasonably remain unaffected by the phone call. *See, e.g.*, *In re Disqualification of Donofrio*, 135 Ohio St.3d 1253, 2012-Ohio-6338, 986 N.E.2d 13, ¶ 7 (personal attacks on a judge will not lead to a judge's disqualification), citing *Mayberry v. Pennsylvania*, 400 U.S. 455, 464, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) ("A judge cannot be driven out of a case") and *Fed. Deposit Ins. Corp. v. Sweeney,* 136 F.3d 216, 219 (1st Cir.1998), quoting 13A Wright, Miller & Cooper, *Federal Practice & Procedure*, Section 3542, 577-578 (2d Ed.1984) (" 'A party cannot force

disqualification by attacking the judge and then claiming that these attacks must have caused the judge to be biased against [her]' " [brackets sic]).

**Alleged future charges**

{¶ 12} Wingate also claims that after Judge Jennings disclosed the improper phone call to the parties, the prosecutor informed Wingate that the state might consider additional charges against Gonzalez. For her part, Judge Jennings states that she has no knowledge of any conversations that Wingate has had with the prosecutor's office.

{¶ 13} Wingate's allegation here is based entirely on speculation. He has not alleged that Gonzalez has been charged with any additional crimes relating to the phone call, nor has he explained how the prosecutor's statement should result in Judge Jennings's disqualification from the underlying case. "Allegations that are based solely on hearsay, innuendo, and speculation—such as those alleged here—are insufficient to establish bias or prejudice." *In re Disqualification of Flanagan*, 127 Ohio St.3d 1236, 2009-Ohio-7199, 937 N.E.2d 1023, ¶ 4.

{¶ 14} For the reasons stated above, the affidavit of disqualification is denied. The case may proceed before Judge Jennings.

———————————